364 A.2d 1324

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA HUMAN RELATIONS COMMISSION (Appellant at No. 60)**

v.

**Stuart R. FEESER, Jr., and Avis Ann Feeser, husband and wife (Appellant at No. 59) (two cases).**

Supreme Court of Pennsylvania.

Argued May 6, 1976.

Decided Oct. 20, 1976.

Ralph W. Boyles, Jr., James H. Stewart, Jr., Harrisburg, for appellant at No. 59 and appellee at No. 60.

Sanford Kahn, Harrisburg, for appellant at No. 60 and appellee at No. 59.

Gerald Gornish, Deputy Atty. Gen., Harrisburg, for intervenor, Robert P. Kane.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case involves cross-appeals from a decision of the Commonwealth Court vacating an order of the Pennsylvania Human Relations Commission (hereinafter "PHRC") and remanding the case to PHRC for a new hearing.

On August 23, 1973, Mr. and Mrs. Williams filed a complaint with PHRC charging the Feesers [1] with refus-

---

1. The complaint filed August 23, 1973, named only Stuart Feeser. The complaint was amended within the statutory period of ninety days to include Stuart Feeser's wife, Avis Ann Feeser.

ing to sell them a particular house in Dauphin County because of their race. PHRC's investigation established probable cause to credit the allegations of the complaint, and it attempted to conciliate the matter. When conciliation failed, PHRC scheduled a public hearing [2] and attempted to secure a preliminary injunction enjoining the Feesers from selling the house to any other purchaser.[3]

A hearing was held on the application for a preliminary injunction on October 4, 1973. After the hearing the court of common pleas denied the application, stating that "the evidence [did] not establish probable cause," apparently, to credit the allegations of the complaint.[4]

The Feesers thereupon petitioned this Court for a writ of prohibition directing that the public hearing scheduled by PHRC be canceled on the ground that the decree of the court of common pleas refusing the application for a preliminary injunction disposed of the central issue in the case. We denied the application on October 29, 1973. PHRC held a public hearing on November 19, 1973, and November 26, 1973. The hearing panel took testimony, heard oral argument and allowed the parties time to submit briefs. On November 4, 1974, the hearing panel submitted to PHRC both its recommendation that it find that the Feesers had committed the unlawful discrimina-

2. This three part procedure of investigation to determine whether there is probable cause to credit the complaint, conciliation to settle the dispute, and public hearings and final order when conciliation fails is set forth in the Pennsylvania Human Relations Act (hereinafter "PHRA"), Act of October 27, 1955, P.L. 744, § 9, 43 P.S. § 959 (Supp.1976).

3. The injunction was sought pursuant to the grant of authority contained in section 9.1 of the PHRA, id. § 9.1, 43 P.S. § 959.1. For the text of section 9.1 see note 6 infra.

4. The order of the court of common pleas is ambiguous. The "probable cause" which was not established could have been either probable cause to grant the injunction or probable cause to credit the complaint filed by the Williams. For the purposes of this opinion, we will assume that the court of common pleas meant to say that there was no probable cause to credit the allegations of the complaint.

tory practice charged in the complaint and proposed findings of fact, conclusion of law and a final order. PHRC adopted the recommendations of the hearing panel.

The Feesers appealed PHRC's decision to the Commonwealth Court which, on July 23, 1975, filed an opinion setting aside PHRC's order and remanding the case for a new hearing. The Commonwealth Court held that (1) the decision of the court of common pleas denying the temporary injunction was not dispositive of the complaint filed with PHRC; (2) the Feesers had been denied due process of law because PHRC's general counsel both represented the Williams before the hearing panel and advised the panel during the hearing, and (3) "observed" that the issue decided by PHRC may not have been dispositive of the case. *Commonwealth Human Relations Commission v. Feeser,* 20 Pa.Cmwlth. 406, 341 A. 2d 584 (1975).

Both parties petitioned this Court for permission to file an appeal,[5] which petitions were granted on December 29, 1975. We vacate the order of the Commonwealth Court and remand to that court for further proceedings in conformity with this opinion.

The Feesers assert that the statement of the court of common pleas that "the evidence [did] not establish probable cause" acts as a bar to any further PHRC action. We disagree. The jurisdiction of the court of common pleas in this case was limited to the power to decide whether an injunction was necessary to preserve the status quo pending PHRC determination of the merits of the complaint filed by the Williams.[6] Re-

5. We hear this appeal under authority of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, § 204(a), 17 P.S. § 211.204(a) (Supp.1976).

6. Section 9.1 of the PHRA, which authorizes the injunction, provides:
   "When it appears that a housing unit . . . involved in a complaint may be sold . . . before a determina-

gardless what reason the court gave for refusing the application for an injunction, neither it nor the Feesers can avoid the limits placed on its jurisdiction under the Act.

The Legislature has chosen, in the PHRA, to charge an administrative agency with the jurisdiction initially to receive, investigate, conciliate, hear, and decide complaints alleging unlawful discrimination.[7] When the statutory procedure is invoked, it is exclusive.[8] Decisions of PHRC are to be reviewed by the Commonwealth Court using a standard of review which gives great deference to the findings of the Commission.[9]

> tion of the case has been made, and the commission shows probable cause for the complaint, the court of common pleas of the county in which the unit is located may issue an injunction restraining the sale . . . . In every such case, the court shall grant or deny the injunction within thirty days of the filing of the suit. The court may attach to any such injunction granted such other conditions as it deems proper. Such injunction, if issued, shall be of no more than thirty days duration. If an extension of time is required by the commission, this extension may be granted at the discretion of the court, but a reasonable bond shall be required by the court before granting such extension."
> PHRA, Act of October 27, 1955, P.L. 744, § 9.1, as amended, 43 P.S. § 959.1 (Supp.1976).

7. Id. § 7, 43 P.S. § 957.

8. Section 12 of the PHRA, id. § 12, 43 P.S. § 962, provides:
> "[A]s to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complaint concerned."
> See also *Daly v. School District of Darby Township,* 434 Pa. 286, 252 A.2d 638 (1969).

9. Section 10 of the PHRA, id. § 10, 43 P.S. § 960, provides that review of PHRC orders shall be in accord with the provisions of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, as amended, 71 P.S. § 1710.1 et seq. (1962). Section 44 of the Administrative Agency Law, id. § 44, 71 P.S. § 1710.44, sets forth the standard of review:
> "[T]he court shall affirm the [agency] adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five [relating to the procedure to be used at the administrative hearing] . . . have been violated . . . or that any find-

Giving final effect, as the Feesers urge, to a finding by a court of common pleas that there is no basis for the complaint in a proceeding on an application for an injunction would disrupt the statutorily mandated procedure. Under the scheme the Feesers urge, the court of common pleas, not PHRC, would receive evidence, weigh the credibility of witnesses and make findings of fact. In their scheme, the court of common pleas, which has no experience handling PHRA complaints, would resolve the dispute, while PHRC, the agency created for this purpose by the Legislature, would be denied an opportunity to hear and decide the case. Finally, the resolution of factual disputes by the court of common pleas, not PHRC, would be given deference by the Commonwealth Court on appeal. This is not the procedure called for by the Act.

We may not distort or destroy the statutorily created scheme of enforcement of the Act in this way.[10] We hold that in a proceeding for an injunction under

ing of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence."
See, e. g., *Pennsylvania Human Relations Commission v. Chester School District*, 427 Pa. 157, 233 A.2d 290 (1967); *Midland Heights Homes v. Pennsylvania Human Relations Commission*, 17 Pa.Cmwlth. 563, 33 A.2d 516 (1975); *General Electric Corp. v. Pennsylvania Human Relations Commission*, 18 Pa.Cmwlth. 316, 321, 334 A.2d 817, 821 (1975). See also, *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Ass'n*, 453 Pa. 124, 133–34, 306 A.2d 881, 887 (1973).

10. In *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Ass'n*, 453 Pa. 124, 133–34, 306 A.2d 881, 887 (1973), we described the scheme of enforcement as follows:
"[T]he Legislature recognized [in the PHRA] that only an administrative agency with broad remedial powers, exercising particular expertise, could cope effectively with the pervasive problem of unlawful discrimination. Accordingly, the Legislature vested in the Commission, quite properly, maximum flexibility to remedy and hopefully eradicate the 'evils' of discrimination. . . .
"We thus recognize that the expertise of the Commission . . . is not to be lightly regarded."
It is precisely this "expertise" which the PHRC has and the courts of common pleas do not have that caused the Legislature to grant only a limited exception to the exclusivity of the agency remedy in section 9.1 of the PHRA.

section 9.1 of the Act, the only issue resolved is whether an injunction should issue. No other effect is to be given the court of common pleas' determination.

We turn now to the central issue in this case. The Feesers argued before the Commonwealth Court that they were denied due process of law when PHRC's general counsel both represented complainants and gave the hearing panel legal advice at the public hearing. The Commonwealth Court accepted this argument and remanded the case to PHRC for a new hearing with conflict-free counsel. We find no evidence in the record to support the contention that PHRC's general counsel advised the hearing panel at the hearing or in the decisional process.

The Feesers base their claim that general counsel for PHRC gave the hearing panel legal advice on three incidents which occurred during the hearing. We have examined each of these incidents as they are reported in the record and find no impropriety. In each instance general counsel was serving solely as attorney for the complainants by arguing the merits of a motion pending before the hearing panel.

The first incident involved the collateral estoppel claim:

"MR. STEWART [counsel for the Feesers]: We have a motion to dismiss in this matter and to terminate the proceedings on the ground that [PHRC] made an application before the Court of Common Pleas of Dauphin County . . . in which . . . the Court found that there was no probable cause for the complaint in this matter . . . .

. . . . . . . .

MR. KAHN [PHRC's general counsel]: The argument advanced by Counsel for Respondents was the basis of his petition in the Supreme Court for petitions of writ of prohibition. . . . [The Supreme Court

has] since denied the petition for a writ of prohibition and rejected the very grounds that now Counselor seeks to raise anew. That matter has already been disposed of by the Supreme Court.

MR. STEWART: May it please the Commission, the writ of prohibition before the Supreme Court is a discretionary writ with the Court and they have many reasons for denying that writ under their procedures other than refusing our fundamental legal position.
.  .  .

MR. KAHN: I think Mr. Stewart is correct. The fact that the Supreme Court denied the petition for writ of prohibition does not in itself mean that—I submit it's probable that they have denied on the merits his argument, but he certainly has a right to raise it again at this stage of the proceedings. I ask that his argument be denied as without merit. As you know, Section 9.1 of the Human Relations Act authorizes the Commission to proceed in a Common Pleas Court when in a housing case the housing under question threatens to be disposed of before the Commission has an opportunity to complete its processes of investigation, consultations and public hearing so in order to render the property in question still existent, in order not to have the case be rendered moot, the legislature provided in Section 9.1 for going into Common Pleas Court. It's true we went into Common Pleas Court to seek that injunction. The Common Pleas Court denied it. By no means does the act indicate that when you go into Common Pleas Court and seek an injunction you thereby do so at the peril of having your case thrown out of Court if the Common Pleas Judge in his discretion .  .  . elects not to grant the injunction.

The argument is without merit, and I ask that it be denied.

DR. SMITH: The motion is denied."

We see no evidence of impropriety in this exchange.

The second incident involved Mr. Feeser's claim that he had a right to face-to-face conciliation with the complainants.

"MR. STEWART: . . . .

The first client, the one against whom the complaint was originally brought, is Stuart Feeser. Mr. Feeser went through the procedures before your Commission for a conference of conciliation. We take the position that conference that was given to Mr. Feeser in this proceeding didn't comply with the requirements of the statute in that he was not permitted a face to face confrontation with the Complainants in this matter in order to determine whether conciliation was possible between the parties. In lieu of that, he was faced merely by three members of the staff of this Commission who failed to give him any information that they had gotten from the Complainants and who insisted that he enter into an agreement that was unacceptable to him on the basis of the explanation he had given them as to what happened.

We think that does not comply with the statutory requirements.

MR. KAHN: Mr. Chairman, neither the Human Relations Act nor the regulations promulgated pursuant to it require or provide that Complainant be present at the conciliation process nor is it the policy or practice of the Human Relations Commission to have Complainants present. The Commission is instructed and mandated by the Act to engage in the process of conciliation and indeed they have attempted to conciliate this case. I ask that the motion be denied.

DR. SMITH: The motion as made by Counsel is denied."

In this case too, general counsel represented the complainants, argued the merits of the motion as an advo-

cate on behalf of those he represented, and the hearing panel chairman ruled on the motion. We find no impropriety in this incident.

The third incident involved the claim that Mrs. Feeser had been denied her right to conciliation.

"MR. STEWART: I have a motion to make on behalf of Avis Ann Feeser. She was not a party to this proceeding at the time that the complaint was administered and she was served as a party in this proceeding on the 12th of November. She has never had an opportunity for conciliation and we object to the public hearing going on with respect to her claim at this time until she had her statutory rights as provided under the law.

MR. KAHN: . . . [T]he co-respondent, Mrs. Feeser, was not a party to the original complaint in this case. As you know, under the Act the Commission is entitled to amend its complaint at any time up to and including the public hearing. The complaint in this matter was amended within the ninety day statutory period to include Mrs. Feeser and she was indeed served with a copy of that complaint.

The motion is not proper before this panel at this time . . . in that at no time since receiving that complaint did they request additional conciliation nor indicate that there would be any value in additional conciliation. . . . [F]urthermore, . . . Mrs. Feeser was indeed represented by Counsel at the conciliation efforts held in this case; and I have here a letter which I will offer to the panel, . . . from Mr. Boyles dated September 14 in which he acknowledges that he represented Mrs. Feeser as well as Mr. Feeser.

. . . . . . . .

. . . Reading from the top of the second paragraph . . . the letter [says]: "You will recall

that the entire matter boiled down to Mr. Feeser's statement that if the Complainants were going to meet his advertised price for the house and the lot in its pre-completion state of $43,700, he and Mrs. Feeser would still be willing to enter into an agreement to convey that property to them."

. . . . . . . .

So I represent to this panel that Mrs. Feeser was indeed represented at the conciliation conference on September 14. That if not formally so, in fact she was. That there has been no request or indication that there would be any value nor was there any request nor desire for individual conciliation on her behalf.

. . . In the Answer submitted on Friday which I will submit to the panel, again Mrs. Feeser does not request conciliation.

She claims she was not afforded that opportunity but again denies categorically all the charges set forth and indicates there was nothing to conciliate. . . . The proper procedure would have been at some point to have requested an opportunity to conciliate. Not wait until the day of the hearing and raise this as a motion for grounds of dismissal.

. . . . . . . .

MR. STEWART: I think my motion with respect to Mrs. Feeser was not for dismissal but that she shouldn't go to public hearing at this time. We set forth in our answer, which we filed in this matter, the fact that she hadn't been afforded her statutory right of conciliation; and . . . I think the record should show . . . [that] the only person represented at the conciliation was Mr. Feeser and we have no evidence that Mrs. Feeser was represented in these proceedings until she was served with the complaint, with the amended complaint. We did represent Mrs. Feeser in an act brought in the Court of Common Pleas because she was sued there. We have never rep-

resented her in this matter until she was served with a complaint.

Now the letter that is before you does make some indication that she would join with her husband in trying to work the matter out in a manner that was there suggested for conciliation, but there was no evidence in that letter that is being written by Mr. Boyles as Counsel for Mr. and Mrs. Feeser or that he participated in the conciliation [as] Counsel for Mr. and Mrs. Feeser.

Furthermore, all of the evidence that we have been given in this matter shows that Mrs. Feeser at no time refused to sell this house. We don't know that there is probable cause as to Mrs. Feeser. I don't know how the Commission knows if they had no conference with her.

MR. KAHN: I repeat Sir that Mrs. Feeser was in fact represented at the conference in this regard. It's untimely to wait until the convening of the hearing itself for purpose of further delay to ask that this matter be set aside for purpose of conciliation. They have not requested conciliation since served on November 12 with an amended complaint. I ask that this motion be denied.

DR. SMITH: The motion is denied."

Once again, there was a motion by the Feesers, both sides presented their arguments on the merits of the motion and the hearing panel ruled. There is nothing in the record to indicate that the ruling of the hearing panel was made because PHRC's counsel had advised it so to rule. Each motion was denied by the panel in the exercise of its independent judgment after hearing both arguments.

The limited, purely adversary role of PHRC's general counsel in this case is easily distinguished from the conduct condemned by this Court in *Horn v. Township of*

*Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975), upon which the Commonwealth Court relied. We described the facts in *Horn* as follows:

> "At the hearing board, the township was represented by its solicitor, Charles Wilson, who also served at the hearing as the zoning board's solicitor. Mr. Wilson conducted the meeting and ruled on evidence presented by appellants and on objections made to the township's evidence presented by Mr. Wilson, himself, when an objection was interposed by appellants. Thereafter, Mr. Wilson, as the zoning board's solicitor, advised the board in legal matters concerning appellants' case."

Id. at 747, 337 A.2d at 859. It was on the basis of this record that we stated:

> "In the case at bar, . . . we are presented with a governmental body charged with certain decision-making functions that must avoid the appearance of possible prejudice, be it from its members or from those who advise it or represent parties before it. In the instant case, the same solicitor represented both the zoning hearing board and the township, which was opposing appellants' application for a zoning variance. While no prejudice has been shown by this conflict of interest, it is our opinion that such a procedure is susceptible to prejudice and, therefore, must be prohibited."

Id. at 748, 337 A.2d at 860. It is clear that *Horn* describes a situation which is completely different than that encountered in this case. In *Horn* the attorney involved was: (1) making objections to the evidence offered by his opponent, and then ruling on his own objections; (2) offering evidence to which his opponent objected and then ruling on the objection to his proffered evidence; and (3) advising the hearing panel concerning the law during the post-hearing process of deciding the merits of his opponent's case. In this case, PHRC's gen-

eral counsel argued the merits of motions made by his opponent and asked that they be denied. So far as the record shows, and it is clear that counsel for the Feesers would have objected had the record not accurately reflected what transpired at the hearing, there was no consultation between PHRC's counsel and the hearing panel. Each motion was decided by the panel on the basis of the arguments presented by both counsel in open session.

We find no violation of *Horn* on this record. Therefore, the order of the Commonwealth Court remanding the case to PHRC for a new hearing with conflict-free counsel must be vacated.

Finally, PHRC asks us to review the Commonwealth Court's "observation" that the issue decided by PHRC was not the controlling issue. This Court does not review "observations." After the Commonwealth Court, on remand, has decided the issues which were properly left undetermined once the first hearing was determined, albeit erroneously, to be faulty, either party may again petition this Court for permission to file an appeal.

Order vacated, case remanded to the Commonwealth Court for proceedings consistent with this opinion.

JONES, C. J., and POMEROY, J., dissent.

EAGEN, J., dissents and would affirm the order of the Commonwealth Court.