526 A.2d 758

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA HUMAN RELATIONS COMMISSION, Appellant,**

v.

**LANSDOWNE SWIM CLUB, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1986.

Decided May 28, 1987.

Elisabeth S. Shuster, General Counsel, Harrisburg, Michael Hardiman, Asst. Gen. Counsel, Philadelphia, for appellant.

Jeffrey L. Pettit, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

### OPINION OF THE COURT

HUTCHINSON, Justice.

The Pennsylvania Human Relations Commission (Commission) appeals an order of Commonwealth Court denying

the Commission's petition for enforcement of a subpoena *duces tecum.* The Commission sought to compel appellee, the Lansdowne Swim Club (Swim Club), to provide various documents it had subpoenaed during its investigation of a complaint of racial discrimination filed against the Swim Club under the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, §§ 1–13, *as amended,* 43 P.S. §§ 951–963. Commonwealth Court determined that the Commission was bound by its decision to dismiss a previous case against the Swim Club. In dismissing that case, which involved a complaint of racial discrimination filed by a different party, the Commission said the Swim Club was not a place of public accommodation over which the Commission would have jurisdiction. Commonwealth Court declined to enforce the subpoena issued in the present case, apparently holding the Commission was precluded from questioning the Swim Club's private status and thus was not entitled to the subpoenaed materials.

We disagree and hold that the question of the Commission's jurisdiction is to be resolved initially by the Commission during an investigation authorized under the Act. Commonwealth Court erred in usurping this function and in concluding prematurely that the Commission lacked jurisdiction. We therefore reverse the order of Commonwealth Court and remand for further proceedings in conformity with this opinion.

The complaint in this case was filed on July 23, 1984, by James T. Ryan, a resident of Lansdowne, on behalf of himself and his minor children, Maria Ramona, Teresa and Ramon. The Ryan complaint alleges that the Swim Club's denial of their application for family membership in the Club was based on race, color or ancestry and hence was discriminatory. Mr. and Mrs. Ryan are white; Maria Ramona is of Puerto Rican ancestry, and Teresa and Ramon are of black and hispanic ancestry.

In August, 1984, the Swim Club filed an Answer and Motion to Dismiss Complaint with the Commission. In October, 1984, the Commission issued an order denying this

motion. By letter dated November 13, 1984, the Commission requested the Swim Club to provide certain data and documents. In December, 1984, the Swim Club forwarded a "partial response" to this request. The Commission issued its subpoena *duces tecum* on January 16, 1985. The Swim Club responded in February, 1985, objecting to the subpoena on the grounds of relevancy, confidentiality and the Commission's lack of jurisdiction in the matter. On April 3, 1985, the Commission issued an order overruling these objections and requiring production of the subpoenaed documents within twenty days. The Swim Club again declined to produce the documents, and the Commission responded by filing its Petition for Enforcement of Subpoena in Commonwealth Court.

Commonwealth Court held an evidentiary hearing on the enforcement petition in October, 1985, during which the Commission produced both testimonial and documentary evidence in support of its petition. The Swim Club called as its only witness the President of the Club, who testified regarding the Club's organization and membership process. In January, 1986, Commonwealth Court issued its order denying the petition for enforcement of the Commission's subpoena.

I

At the threshold, we must determine whether the Commission is entitled to appellate jurisdiction in this matter as of right, or only by discretion. We hold that jurisdiction on this appeal from Commonwealth Court is vested in this Court as of right pursuant to Section 723(a) of the Judicial Code. That section gives us exclusive jurisdiction of appeals from final orders entered in any matter originally commenced in Commonwealth Court, "except an order entered in a matter which constitutes an appeal" to that court. 42 Pa.C.S. § 723(a). Our jurisdiction over appeals such as this one involving a *subpoena* enforcement action, auxiliary to the Commission's exercise of its investigatory function, differs from that in actions for enforcement of final agency

orders issued after hearings. *Compare Pennsylvania Human Relations Comm'n v. St. Joe Minerals Corp.*, 476 Pa. 302, 382 A.2d 731 (1978) (direct appeal to Supreme Court on issue of whether the Commission could obtain judicial enforcement of an order requesting an answer to written interrogatories pursuant its investigatory function) *with Commonwealth of Pennsylvania, Pennsylvania Human Relations Comm'n v. Scranton School Dist.*, 510 Pa. 247, 507 A.2d 369 (1986) (no right of direct appeal in an enforcement proceeding emanating from issuance of a final order by the Commission).

■ In a subpoena enforcement proceeding, the action is brought by an agency of the Commonwealth and Commonwealth Court's jurisdiction is original and concurrent with the courts of common pleas. 42 Pa.C.S. § 761(a)(2); 42 Pa.C.S. § 761(b). Here, the Commission elected to bring the enforcement action in Commonwealth Court. 43 P.S. § 957(g) (Supp.1986).[1] The enforcement action is the only judicial proceeding that has been brought thus far pursuant to the Ryan complaint. The Commission has not yet determined whether probable cause exists to credit the allegations in the complaint and has not commenced an action against the Swim Club on the merits of the complaint.

The only issue before the Court at this time, which was addressed initially by Commonwealth Court, is the propriety of the subpoena issued by the Commission. Commonwealth Court's order denying the petition for enforcement of this subpoena is a final order because it disposes of the entire

1. Under the provisions of the Human Relations Act, the Commission may not itself determine the validity of its subpoena, but must place that question before a court:

> (g) In case of contumacy or refusal to obey a subpoena issued to any person *any court of jurisdiction,* upon application by the Commission, may issue to such person an order requiring such person to appear before the Commission, there to produce documentary evidence, if so ordered, or there to give evidence touching the matter in question, and any failure to obey such order of the court may be punished by said court as a contempt thereof.

43 P.S. § 957(g) (emphasis added).

matter before that court.[2] As a practical matter, it precludes (or substantially impedes) the Commission's exercise of its statutory duty to investigate charges of unlawful discriminatory practices. Direct appeal to this Court is therefore proper because this matter was originally commenced in Commonwealth Court and the issues presented by this appeal from a final order have not previously been reviewed by an appellate court. Pa. Const. art. V, § 9; 42 Pa.C.S. § 723(a).

## II

To determine whether Commonwealth Court erred as a matter of law in concluding that the Commission lacks jurisdiction over the Swim Club, it is necessary first to consider the purpose of the Pennsylvania Human Relations Act. That Act states that it is an unlawful discriminatory practice:

(i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employe of any place of public accommodation, resort or amusement to

(1) Refuse, withhold from, or deny to any person because of his race, color, sex, religious creed, ancestry, national origin or handicap or disability, or to any person due to use of a guide dog because of the blindness or deafness of the user, either directly or indirectly, any of

**2.** An order granting enforcement of a subpoena would not be subject to our review, however, because it is interlocutory. *Pennsylvania Human Relations Comm'n v. Jones & Laughlin Steel Corp.*, 483 Pa. 35, 394 A.2d 525 (1978). Such an order does not place the party against whom the subpoena is enforced "out of court." *See Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978) (whether an order is final and appealable *cannot be determined simply from the technical effect of the adjudication*; if the practical consequence of the order is to put the party "out of court," the order will be treated as final). It compels that party to produce material necessary for the agency to conduct an investigation pursuant to its statutory powers. The party is not precluded from presenting its defense to the agency, should the agency determine there is probable cause to proceed on the merits. Further, the party would be entitled to review by Commonwealth Court on the merits once the agency had issued a final order. Review by this Court of Commonwealth Court's decision would in that instance be upon allowance of appeal. 42 Pa.C.S. § 724(a).

the accommodations, advantages, facilities or privileges of such place of public accommodation, resort or amusement.

43 P.S. § 955(i)(1) (Supp.1986). It defines the term "place of public accommodation, resort or amusement" as:

any place which is open to, accepts or solicits the patronage of the general public, including but not limited to inns, taverns, roadhouses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants or eating houses, or any place where food is sold for consumption on the premises, buffets, saloons, barrooms or any store, park or enclosure where spirituous or malt liquors are sold, ice cream parlors, confectioneries, soda fountains and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises, drug stores, dispensaries, clinics, hospitals, bathhouses, swimming pools, barber shops, beauty parlors, retail stores and establishments, theatres, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, fairs, bowling alleys, gymnasiums, shooting galleries, billiard and pool parlors, public libraries, kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses and all educational institutions under the supervision of this Commonwealth, nonsectarian cemeteries, garages and all public conveyances operated on land or water or in the air as well as the stations, terminals and airports thereof, but shall not include any accommodations which are in their nature distinctly private.

43 P.S. § 954(*l*) (Supp.1986).

If the Swim Club is a "place of public accommodation," it is subject to the Act and within the jurisdiction of the Commission, and it may not deny membership to persons on the basis of their race, color or ancestry. Beyond this, the language of the statute provides little guidance. A swim-

ming pool *may* be a "place of public accommodation" if it "accepts ... the patronage of the general public" and is not in its nature "distinctly private." These references to the general concepts of "public" and "private" take on meaning only as applied to specific factual situations. The appropriate body to make such applications is the Commission, which is charged by the Legislature with administering the Act and is empowered not only to promulgate rules and regulations but also to formulate policies to effectuate the provisions and purposes of the Act.[3] *See* 43 P.S. § 957(d) and (e).

Commonwealth Court's determination that the Commission lacks jurisdiction in this matter does not directly contradict this conclusion. It apparently accepts the power of the Commission to make a finding as to whether an organization or its facilities are public or private.[4] It holds only that the Commission, having once stated that a particular entity is private, is bound by that statement if a court reviewing a subpoena enforcement petition finds that the status of the entity has not changed. We disagree for the reasons that follow.

In language emphasizing the broad power delegated to the Commission, Section 9 of the Act sets forth the three stage procedure of investigation to be followed upon the filing of a complaint.[5] The Commission's duty is to investi-

---

3. The Commission's issuance of guidelines or standards on the question of what constitutes a "place of public accommodation" as opposed to a "distinctly private" facility would promote compliance with the Act and help clarify what records are relevant to its investigations of organizations like the Swim Club.

4. For a recent appellate decision on the public/private distinction, *see New York State Club Ass'n, Inc. v. City of New York,* 69 N.Y.2d 211, 513 N.Y.S.2d 349, 505 N.E.2d 915 (1987). The court upheld a local human rights law that specified when a private club would be deemed to have lost its "distinctly private" character and instead have become sufficiently "affected with a public interest" to forfeit its exemption from coverage under the local anti-discrimination law. Slip op. at 10. The court's analysis is similar to that employed by this Court in *Commonwealth, Human Relations Comm'n v. Loyal Order of Moose,* 448 Pa. 451, 294 A.2d 594, *appeal dismissed,* 409 U.S. 1052, 93 S.Ct. 557, 34 L.Ed.2d 506 (1972).

5. That Section provides, in pertinent part:

gate to determine whether there is probable cause to credit a complaint, to settle the dispute through conciliation, and to hold hearings and issue final orders if conciliation fails. The Commission must conduct an investigation whenever a valid complaint is filed or it has reason to believe an unlawful discriminatory practice has been committed. There is no indication in the language of the Act that this mandatory, initial investigative stage of the prescribed procedure may be cut short simply because the Commission had earlier conducted an investigation of the same entity and concluded that no probable cause existed at that time to credit the allegations in that complaint. Neither the language of this Act nor our prior case law support such an

> (a) Any individual claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the Commission a verified complaint.... The Commission upon its own initiative ... may, in like manner, make, sign and file such complaint....
>
> (b) After the filing of any complaint, or whenever there is reason to believe that an unlawful discriminatory practice has been committed, the Commission shall make a prompt investigation in connection therewith.
>
> (c) If it shall be determined after such investigation that no probable cause exists for crediting the allegations of the complaint, the Commission shall ... cause to be issued and served upon the complainant written notice of such determination.... If it shall be determined after such investigation that probable cause exists for crediting the allegations of the complaint, the Commission shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion....
>
> (d) In case of failure so to eliminate such practice or in advance thereof, if in the judgment of the Commission circumstances so warrant, the Commission shall ... requir[e] ... a hearing before the Commission....
>
> ....
>
> (f) If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in the act, the Commission ... shall issue ... an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action ... as, in the judgment of the Commission, will effectuate the purposes of this act....
>
> (g) The Commission shall establish rules or practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder.
>
> 43 P.S. § 959 (Supp.1986).

inference. *See, e.g., Baker v. Commonwealth, Pennsylvania Human Relations Comm'n,* 507 Pa. 325, 333, 489 A.2d 1354, 1358 (1985) (Commission has discretion to select those cases to which it will afford full enforcement proceedings); *Mercy Hospital v. Pennsylvania Human Relations Comm'n,* 499 Pa. 132, 136, 451 A.2d 1357, 1359 (1982) (fact that court can achieve an expeditious resolution of a dispute does not warrant its intervention in the statutory process designed for its resolution).

■ The jurisdiction of Commonwealth Court in this case is limited to the power to decide whether to enforce the subpoena issued by the Commission in January, 1985, as part of its investigation pursuant to filing of the Ryan complaint. *See* 43 P.S. § 957(g). *See also Commonwealth of Pennsylvania, Pennsylvania Human Relations Comm'n v. Feeser,* 469 Pa. 173, 177, 364 A.2d 1324, 1326 (1976) (jurisdiction of court of common pleas was limited to the power to decide whether an injunction was necessary to preserve the status quo pending the Commission's determination of the merits of a complaint).

The scope of judicial review of petitions for enforcement of administrative agency subpoenas is limited to a determination whether "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Commonwealth v. Shults,* 26 Pa.Commonwealth Ct. 129, 132, 362 A.2d 1129, 1131 (1976), *quoting United States v. Morton Salt Co.,* 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950). Before enunciating this standard, the United States Supreme Court described the powers invested in administrative agencies and clarified the difference between administrative and judicial inquiry:

The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing

that the laws are enforced may not have and exercise *powers of original inquiry.* It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

*Id.* at 642–43, 70 S.Ct. at 364 (emphasis added). Our conclusion that the Commission need not prove it has jurisdiction as a condition precedent to judicial enforcement of an administrative subpoena is supported by federal law. *See EEOC v. Shell Oil Co.,* 466 U.S. 54, 72 n. 26, 104 S.Ct. 1621, 1632–33 n. 26, 80 L.Ed.2d 41 (1984) (any effort by the court in a subpoena enforcement action to assess the likelihood that the Commission would be able to prove the claims made in its charge would be reversible error); *United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964) (government need make no showing of probable cause to suspect fraud in order to obtain judicial enforcement of administrative summons under federal tax code); *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946) (investigative function of Administrator under Fair Labor Standards Act must not be limited by "forecasts of the probable result of the investigation"); *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943) (district court had no authority to condition enforcement of Secretary of Labor's subpoena upon her first reaching a decision on question of whether certain employees were covered under the Walsh-Healey Act).[6]

**6.** *See also EEOC v. Ocean City Police Department,* 787 F.2d 955, 957 (4th Cir.1986) (administrative agency, not the court, is responsible for determining in the first instance, through preliminary investigations, coverage under the statute); *EEOC v. Peat, Marwick, Mitchell and Co.,*

As we stated in *Mercy Hospital,* 499 Pa. at 137, 451 A.2d at 1359, the Commission is vested by our Legislature with the authority to decide challenges to its jurisdiction. We emphasize here that the Commission's authority in this regard is not limited to its first investigation of an organization, but exists each time it conducts an investigation pursuant to the Act. To hold otherwise would undermine the broad discretion of the Commission and impede its ability to develop a clear body of law on discriminatory practices.

In the course of a subpoena enforcement proceeding, a reviewing court may, of course, determine whether the subpoena was issued solely to harass the entity under investigation, considering such factors as the frequency of investigations concerning the same alleged discriminatory practices. The court's process is invoked to enforce the administrative subpoena, and the court may not permit its process to be abused. Here, when three years have elapsed since the Commission's prior investigation of the Swim Club, it is hard to see such an improper purpose. The mere fact that an organization feels a second investigation of its practices is an annoyance or harassment should not be confused with the question of whether the *Commission's* request for judicial enforcement of a subpoena is made in good faith pursuant to an inquiry within its authority.

For these reasons, Commonwealth Court erred in considering the Commission's jurisdiction in this matter and in denying the petition for enforcement of the subpoena *duces tecum* on the ground that the Commission lacked jurisdiction. We therefore vacate the order of Commonwealth Court and remand for consideration of the validity of the subpoena at issue in a manner consistent with this opinion.

775 F.2d 928, 930 (8th Cir.1985), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986) (subpoena enforcement proceeding is not an appropriate forum in which to litigate the issue of coverage under a federal statute); *EEOC v. Roadway Express, Inc.,* 750 F.2d 40, 42 (6th Cir.1984) (it is not proper to litigate the merits of a claim, whether procedurally or substantively, during a subpoena enforcement proceeding).

McDERMOTT, J., files a dissenting opinion, in which ZAPPALA and PAPADAKOS, JJ., join.

ZAPPALA, J., files a dissenting opinion.

McDERMOTT, Justice, dissenting.

In 1981, the Human Relations Commission found that appellant, Lansdowne Swim Club, was "distinctly private" and dismissed a complaint as "outside the commission's jurisdiction". Three years later, pursuant to another complaint, the Human Relations Commission sought to do again what they finished in 1981. I agree that when they receive a complaint they are entitled to a subpoena *duces tecum* to complete their investigative function. When, however, they have fulfilled their function, and found no jurisdiction because of the private nature of the group investigated, they ought not have the right to a new subpoena at the drop of every new complaint.

I would affirm the order of the Commonwealth Court.

ZAPPALA and PAPADAKOS, JJ., join in this dissenting opinion.

ZAPPALA, Justice, dissenting.

I join in the dissenting opinion authored by Mr. Justice McDermott. I write separately, however, because I am of the opinion that the resolution of this matter lies in a middle ground between the position taken by Mr. Justice McDermott and that of the majority of this Court.

I would hold that where the commission has once determined itself lacking jurisdiction to prosecute a complaint against an entity, and in investigating a later complaint against the same entity alleging the same acts of discrimination seeks enforcement of a subpoena *duces tecum*, the respondent/entity may oppose the subpoena by producing credible, substantive evidence that the status of its operation has remained unchanged. Review by this Court is then limited to determining whether the lower court abused its discretion in enforcing the subpoena or denying enforcement based on the evidence before it. *In re: Petition for*

*Enforcement of a Subpoena to Anthony Semeraro*, 511 Pa. 584, 588, 515 A.2d 880, 882 (1986).

Applying that rule to the instant case my review of the record indicates that the Appellee produced sufficient competent evidence to persuade the Commonwealth Court to conclude that its operation had remained status quo. At 515 Pa. 4–6, 526 A.2d 760. Finding no abuse of discretion, I would affirm.