# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Milton Hershey School,            :

             Petitioner     :   **CASE SEALED**

                        :

         v.            :   No. 665 C.D. 2019

                        :   Argued:  September 9, 2019

Pennsylvania Human Relations   :

Commission,                :

             Respondent   :


BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** Judge
               **HONORABLE ELLEN CEISLER,** Judge
               **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: November 4, 2019**

Before this Court is the petition for review filed by permission pursuant to Pennsylvania Rule of Appellate Procedure 1311 (note), Pa.R.A.P. 1311 (note),[1] of Milton Hershey School (MHS or School), which asserts that the Pennsylvania Human Relations Commission (Commission) erred in denying MHS's Motion to Dismiss for Lack of Jurisdiction (Motion to Dismiss) a Complaint filed against MHS

---

[1] The note to Rule 1311 provides that:

[w]here the administrative agency or lower court refuses to amend its order to include the prescribed statement, a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal.  If the petition for review is granted in such a case, the effect . . . is the same as if a petition for permission to appeal had been filed and granted, and no separate petition for permission to appeal need be filed.

Pa.R.A.P. 1311 (note).

pursuant to the Pennsylvania Human Relations Act[2] (Act). Pursuant to the June 26, 2019 Order of this Court, granting MHS permission to file its petition for review, the issue before us is "[w]hether [MHS] qualifies as a 'public accommodation' under Section 4(*l*) of the [Act], 43 P.S. § 954(*l*)." A Commission Motions Examiner concluded that MHS was a public accommodation and, therefore, denied the Motion to Dismiss in an April 16, 2019 interlocutory Order. For the reasons that follow, we vacate that Order and remand for further proceedings, which shall include an evidentiary hearing on this jurisdictional question.

Also before the Court is "The Application for Partial and Prospective Reconsideration of the Granting of Petitioner's Application to Seal the Record" (Application) filed by Intervenor, the complainant, requesting that the Court reconsider its prior order sealing this case and record. Given the multiple privacy interests involved, we will maintain the case and record under seal, but this opinion is designated a reported opinion so as to allow public review of the issue before the Court. Therefore, Intervenor's Application is granted in part and denied in part. Consistent with the sealing of the record and the privacy interests involved, the underlying facts related to the Complaint and the actions taken after its filing will not be referenced in this opinion beyond stating that the Complaint involved a student's readmission to the School following a leave of absence.

## I. Background

### a. The Motion to Dismiss and Responses

On November 19, 2018, MHS filed the Motion to Dismiss, asserting that the Commission lacked jurisdiction because MHS is not a public accommodation under the Act. A "public accommodation," as relevantly defined, is

---

[2] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

**any accommodation**, resort or amusement **which is open to, accepts or solicits the patronage of the general public,** including but not limited to . . . **kindergartens, primary and secondary schools, high schools**, academies, colleges and universities, extension courses **and all educational institutions under the supervision of this Commonwealth**, . . . but **shall not include any accommodations which are in their nature distinctly private**.

43 P.S. § 954(*l*) (emphasis added). In its Motion to Dismiss, MHS requested an evidentiary hearing and set forth factual averments it believed supported its arguments that because the School is distinctly private in nature, is neither open to nor accepts or solicits the patronage of the general public, and/or is not supervised by the Commonwealth, it is not a public accommodation. In support, MHS cited this Court's decision in *Roman Catholic Archdiocese v. Pennsylvania Human Relations Commission*, 548 A.2d 328 (Pa. Cmwlth. 1988), which held that Catholic parochial schools, despite being schools and accepting non-Catholic students, were distinctly private in nature due to their religious character and, therefore, not public accommodations.

The Commission's Chief Counsel responded to the Motion to Dismiss, maintaining that MHS was "clearly a public accommodation" as "[i]t is undeniably a school included in the list of public accommodations of" Section 4(*l*). (Reproduced Record at 92a.) The response disputed the claims that MHS was not open to and did not solicit or accept patronage of the general public, and asserted that the School was open to all students who met the School's minimum requirements. It likewise disputed that MHS was like the Catholic parochial schools that were found not to be public accommodations in *Roman Catholic Archdiocese*.

MHS filed a reply, including therein additional arguments and factual averments, and attaching thereto supporting declarations of School employees, to respond to the arguments and facts asserted in opposition to the Motion to Dismiss.

It, again, requested a hearing and asked that the resolution of this jurisdictional issue occur prior to any hearing on the merits of the underlying Complaint. MHS further requested that, if the Motion to Dismiss was denied, the issue be certified for immediate appeal to this Court, as the Commission had done in *Roman Catholic Archdiocese* and *Chestnut Hill College v. Pennsylvania Human Relations Commission*, 158 A.3d 251, 256 (Pa. Cmwlth. 2017), both of which involved denials of motions to dismiss for lack of jurisdiction.

Intervenor filed a sur-reply, challenging the accuracy of MHS's averments and the propriety of the arguments the School made in its reply brief.

### b. *The Decisions Denying the Motion to Dismiss and Refusal to Certify*

Despite MHS's requests, no evidentiary hearing was held on the Motion to Dismiss. Instead, the Commission's assigned Motions Examiner denied the Motion to Dismiss in the April 16, 2019 Interlocutory Order. Motions Examiner rejected each of MHS's arguments that the Commission lacked jurisdiction in turn. In rejecting MHS's contention that it is distinctly private, Motions Examiner did not address MHS's particular factual claims as to why it is distinctly private. Rather, Motions Examiner held that *Roman Catholic Archdiocese* was distinguishable because, in that case, "the schools in question were found to be distinctly private principally because the schools [were] the 'principal organs for transmission of the Catholic faith to new generations of Catholics,'" and the fact that the schools admitted non-Catholics did not change the "religious character" of those schools. (April 16, 2019 Order at 3.) Motions Examiner concluded MHS could not succeed in its argument that it is distinctly private because it "quite simply meets the definition of a public accommodation and the argument that it is not is rejected." (*Id.* at 4.)

4

In rejecting MHS's argument that the School is not open to the "general public," Motions Examiner explained that "no school is open to the 'general public'" but schools "are open to students of certain ages who live in certain areas." (*Id.* at 3.) Motions Examiner held that a school's selectivity in its admission process, one of the bases for MHS's argument, "does not deter from the fundamental fact [that it] draw[s] students from the general public." (*Id.*) Further, Motions Examiner concluded the Act's definition of public accommodation clearly includes "primary and secondary schools, high schools" and it was "without question that [MHS] is indeed a 'school.'" (*Id.*)

Finally, in rejecting MHS's argument that it was not a school subject to supervision by the Commonwealth, Motions Examiner held that "a liberal reading" of the definition reflects that "**any and all schools** are covered under Section 4(*l*)." (*Id.* at 3 (emphasis added).) Motions Examiner further explained that although the Commission had found "a difference between private schools and those schools under the supervision of the Commonwealth," it had found that "clearly, both [types of schools] are covered" by Section 4(*l*). (*Id.*)

Motions Examiner did not address MHS's request for immediate certification for appeal. Upon MHS's renewal of that request, the Commission, through the same Motions Examiner, declined to amend the April 16, 2019 Order to allow for immediate appeal, explaining as follows. (May 8, 2019 Order.) "For the reasons outlined in the April 16, 2019 Order, the [Commission] finds that there is not 'substantial' grounds for difference of opinion regarding the issue of whether [MHS] meets the [Act's] definition of a public accommodation." (May 8, 2019 Order at 2.) "Simply stated, [MHS] is **clearly a school that need not be supervised by the**

**Commonwealth and that members of the general public can and do attend**.”
(*Id.* (emphasis added).)

## II. MHS's Petition for Review to this Court

### a. *The June 26, 2019 Order of this Court*

Subsequent to the refusal to certify the matter for appeal, MHS filed a petition for review seeking appellate review of these Orders under Appellate Rule 1311 (note). Following argument, this Court granted permission in an order dated June 26, 2019. Therein, we granted review of the following issue: "Whether [MHS] qualifies as a 'public accommodation' under Section 4(*l*) of the . . . Act, 43 P.S. § 954(*l*)." We further granted MHS's application to maintain the case and record under seal. We now consider whether, based on this record, the Commission, through Motions Examiner, erred in concluding that MHS is a public accommodation.

### b. *The Parties' Arguments*

MHS generally argues the Commission's conclusion that "any and all schools are covered under Section 4(*l*)" of the Act, (April 16, 2019 Order at 3), is contrary to that section's plain language and this Court's precedent. MHS asserts this holding is contrary to *Roman Catholic Archdiocese*, which, MHS argues, rejected such a broad interpretation of Section 4(*l*). While MHS does not appear to dispute that there may be some circumstances when it could be considered a public accommodation for purposes of the Act, for example, a high school basketball game open to the public, it asserts that, under these circumstances, it does not meet any of the three requirements necessary to render it a public accommodation. Further, MHS maintains that the record on appeal consists of the facts, as set forth in its filings and

6

attachments thereto, which have not been challenged. According to MHS, this Court, after reviewing those unchallenged facts as to each of its claims, can resolve this issue at this time. Based on that record, MHS argues, it is not a public accommodation, and, therefore, the Order denying its Motion to Dismiss must be reversed and the Complaint dismissed for lack of jurisdiction.[3]

Intervenor argues that MHS's arguments are premised on the narrowest and most technical interpretations of the Act, which is required to be construed liberally, Section 12(a) of the Act, 43 P.S. § 962(a) ("The provisions of this act shall be construed liberally for the accomplishment of the purposes thereof . . . ."). Intervenor attaches exhibits to Intervenor's brief, which are intended to counter MHS's factual averments and the conclusions MHS draws from those averments regarding each of the reasons MHS maintains it is not a public accommodation.

The Commission argues that MHS would not be entitled to a reversal as to the denial of the Motion to Dismiss because MHS has not established that, as a matter of law, it is not a public accommodation. The Commission asserts it has the authority to decide its own jurisdiction in the first instance, even where it is not clear whether it has jurisdiction. *Pittsburgh Bd. of Pub. Educ. v. Pa. Human Relations Comm'n*, 820 A.2d 838, 841-42 (Pa. Cmwlth. 2003). Additionally, it maintains that, in deciding whether MHS is a public accommodation, the three-factor test MHS asserts is incorrect, citing a two-factor test used by the Supreme Court in *Pennsylvania Human Relations Commission v. Lansdowne Swim Club*, 526 A.2d 758, 761 (Pa. 1987). The Commission observes that, due to the procedural posture of this case,

---

[3] We note that MHS, as well as the Commission and Intervenor, go into greater detail in their arguments on each of the particular reasons why MHS maintains it is not a public accommodation. However, due to the manner in which we resolve the issue before us, setting forth those detailed arguments, and the factual averments upon which they are premised, is not necessary.

there has been no hearing at which MHS has presented evidence in support of its claim that the Commission lacks jurisdiction and no determination on the issue by the Commission. It maintains a factual inquiry into MHS's allegations must be conducted before the Commission's adjudicatory arm because whether an entity is a public accommodation depends upon the specific factual situation involved. *Lansdowne Swim Club*, 526 A.2d at 761. The Commission asserts that there is undeveloped, factual evidence that must be weighed by the trier of fact as to whether MHS is a public accommodation subject to the Commission's jurisdiction. Contrary to MHS's position, the Commission argues, there is no record here, only factual allegations that have not been subject to examination, cross-examination, and fact finding. Therefore, the Commission requests that the Court dismiss MHS's Petition and allow it to determine whether it has jurisdiction over MHS.

MHS argues in response that no evidentiary hearing is necessary to determine its status as a public accommodation. It asserts the Commission ceded the right to contest the School's factual averments when Motions Examiner chose not to hold an evidentiary hearing and when the Commission did not challenge those factual allegations in the Commission's filings before Motions Examiner.

### c. Discussion

After reviewing the parties' arguments, the relevant statutory provisions, and the precedent interpreting those provisions, we agree with MHS that Motions Examiner and, therefore, the Commission, erred in concluding that MHS was a public accommodation as a matter of law at this stage. However, we disagree with MHS that no evidentiary hearing before the Commission is required to resolve this jurisdictional issue.

8

It is well-settled that the Commission has the authority to determine its jurisdiction in the first instance, even where it may not be clear that it would have jurisdiction over a particular entity. *Id.* at 761; *Pittsburgh Bd. of Pub. Ed.*, 820 A.2d at 841. Our Supreme Court has clarified that when determining whether an entity is a public accommodation under Section 4(*l*), which is a prerequisite to the Commission having jurisdiction, "[t]he[] references to the general concepts of 'public' and 'private' [in that section] take on meaning **only as applied to specific factual situations**." *Lansdowne Swim Club*, 526 A.2d at 761 (emphasis added). It is the Commission that "is '[t]he appropriate body' to apply the concepts of public and private to assess the nature of the accommodation before it." *Chestnut Hill Coll.*, 158 A.3d at 258.

The factual nature of this inquiry is reflected in our decisions in *Roman Catholic Archdiocese* and *Chestnut Hill College*. In both of those cases, we were, as here, reviewing the denial of motions to dismiss for lack of jurisdiction. This Court, in both cases, noted the procedural posture of the appeals and the resulting lack of an evidentiary record. *Chestnut Hill Coll.*, 158 A.3d at 261; *Roman Catholic Archdiocese*, 548 A.2d at 330. In *Roman Catholic Archdiocese*, the Archdiocese submitted documents and publications to this Court to support its argument that parochial schools were distinctly private based on their role in transmitting the Catholic faith. The Court was not able to consider the documentation given "the present posture of th[e] case, where no testimony has been taken and we are concerned only with preliminary motions" and because the documentation was "not in evidence and . . . [was] not part of the record." *Roman Catholic Archdiocese*, 548 A.2d at 330. However, the United States Supreme Court had already found, in

9

*Lemon v. Kurtzman*, 403 U.S. 602, 616 (1971),[4] that Catholic parochial schools play a significant role in the religious mission of the Catholic faith and the substantial religious activity and purpose of those schools. Therefore, this Court, bound to apply that finding, determined that the Catholic parochial schools were distinctly private in nature due to the religious character, citing *Lemon*.

In *Chestnut Hill College*, we were asked to expand *Roman Catholic Archdiocese*'s holding to Catholic colleges, although lacking "the benefit of a factual record." *Chestnut Hill Coll.*, 158 A.3d at 260. We explained, however, that the holding in *Lemon* could not be applied to Catholic colleges because the factual differences between the religious activities and purposes of Catholic parochial schools and Catholic colleges had been recognized in federal court decisions. *Id.* Thus, because Catholic colleges were factually distinguishable from the Catholic parochial schools at issue in *Roman Catholic Archdiocese*, a factual record was necessary. We could not, "at this stage, **when the factual record remains undeveloped**," determine that "[the c]ollege is not absolutely excluded from the definition of 'public accommodation' based on its religious nature." *Chestnut Hill Coll.*, 158 A.3d at 261 (emphasis added). The Court did "**not foreclose the possibility that [the c]ollege may demonstrate its distinctly private nature**

---

[4] In *Lemon*, the Supreme Court observed that the district court had

> concluded that the parochial schools constituted an "integral part of the religious mission of the Catholic church." The various characteristics of the schools make them "a powerful vehicle for transmitting the Catholic faith to the next generation." This process of inculcating religious doctrine is, of course, enhanced by the impressionable age of the pupils, in primary schools particularly. In short, parochial schools involve substantial religious activity and purpose.

403 U.S. at 616. The concurring opinion authored by Justice Douglas and joined by Justice Black noted "the admitted and obvious fact that the raison d'etre of parochial schools is the propagation of a religious faith." *Id.* at 628 (Douglas, J., concurring).

10

**during the proceedings before the Commission, based on a factual** . . . **determination**.” *Id.* (emphasis added).

Thus, the question of whether an entity is a public accommodation is one determined by the specific factual situation of each case. *See, e.g.*, *Lansdowne Swim Club*, 526 A.2d at 761; *Chestnut Hill Coll.*, 158 A.3d at 261; *Gilbert v. Milton Hershey School*, No. 1:16-CV-1798, (M.D. Pa. Aug. 30, 2017), 2017 WL 3727447, at *6 (dismissing claim under the Act because of the plaintiff’s “fail[ure] to aver sufficient **facts** from which the court could conclude that [MHS], a private school, would qualify as a ‘public accommodation’ as defined by the Act”) (emphasis added). With this in mind, we consider the Orders at issue.

We begin with the Commission’s assertion that **it** has not made a determination on MHS’s status as a public accommodation. Here, Motions Examiner issued the Orders denying MHS’s Motion to Dismiss and request to certify that issue for immediate appeal. Pursuant to the Commission’s regulations, such orders are considered “a ruling of the Commission for all purposes.” 16 Pa. Code § 42.131(e). That these Orders were made on behalf of the Commission is further reflected by the fact that each Order ends with “Pennsylvania Human Relations Commission” followed by Motions Examiner’s signature. Thus, we do not agree that the Commission has not addressed this jurisdictional issue. However, this does not end our inquiry, and we now turn to the Orders themselves to determine whether they are erroneous, as asserted by MHS.

The April 16, 2019 Order denying MHS’s Motion to Dismiss did so based on its conclusion, without limitation or qualification, that “**any and all schools** are covered under Section 4(*l*),” and that MHS “quite simply meets the definition of a public accommodation.” (April 16, 2019 Order at 3-4 (emphasis added).) In the

11

subsequent May 8, 2019 Order denying certification for immediate appeal, Motions Examiner stated there were "not 'substantial' grounds for difference of opinion regarding the issue of whether [MHS] meets the [Act's] definition of public accommodation," (May 8, 2019 Order at 2). This order further explained, "[s]imply stated, [MHS] is clearly a school that need not be supervised by the Commonwealth and that members of the general public can and do attend." (*Id.*) These broad conclusions were made without the benefit of an evidentiary hearing and reflect that they were statements made as a matter of law, rather than based on an examination of the particular factual situation.

First, to the extent Motions Examiner found that "any and all schools are covered under Section 4(*l*)," (April 16, 2019 Order at 3), this Court rejected a similar argument in *Roman Catholic Archdiocese*. In that case, the Commission argued that the "Act lists schools as within the purview of the public accommodation sections of the Act without limitation or qualification as to private or sectarian schools." *Roman Catholic Archdiocese*, 548 A.2d at 329. Examining the educational entities listed in Section 4(*l*), we observed this list did not include "parochial schools" and, therefore, those schools were excluded under the legal maxim of "*expressio unius est exclusio alterius*." *Id.* at 329-30. Thus, not all schools are covered by Section 4(*l*). Moreover, even if the type of school or educational entity is included in that list, it remains possible that the school may be excluded from Section 4(*l*) if it can prove that it is distinctly private in nature. *Chestnut Hill Coll.*, 158 A.3d at 260-61 (noting that colleges and universities were specifically listed as public accommodations in Section 4(*l*), but providing the college the opportunity to present facts to establish that it would be excluded as distinctly private in nature).

12

Accordingly, the conclusion that "any and all schools are covered under Section 4(*l*)" is erroneous. (April 16, 2019 Order at 3.)

Second, as noted above, because there was no evidentiary hearing, Motions Examiner could not rely on any particular evidence to find that MHS is a public accommodation. Rather, Motions Examiner relied only on the conclusions that MHS is a school that he believed admitted members of the general public, without fully addressing the factual allegations made by MHS regarding it not being open to the general public. More critically, Motions Examiner left unaddressed MHS's factual allegations related to the multiple reasons it claims it is distinctly private in nature. While Motions Examiner observed that *Roman Catholic Archdiocese* involved Catholic parochial schools, leaving unsaid that MHS is not a Catholic parochial school, this fact is not determinative on whether a school is a public accommodation. *See Chestnut Hill Coll.*, 158 A.3d at 260-67 (remanding for factual development on the issue of whether the college was distinctly private in nature). Under the circumstances here, which do not involve a Catholic parochial school, an evidentiary hearing is necessary to address MHS's specific claims that it is not a public accommodation subject to the Commission's jurisdiction. Due to the undeveloped factual record in this case, Motions Examiner's conclusion that MHS is a public accommodation was not based on an examination of the specific factual situation as required by *Lansdowne Swim Club*, 526 A.2d at 761. Accordingly, the Orders finding that MHS is a public accommodation subject to the Commission's jurisdiction are vacated, and this matter is remanded for an evidentiary hearing at which a record can be created in order to resolve this jurisdictional question, which is a determination for the Commission in the first instance. *Lansdowne Swim Club*, 526 A.2d at 761; *Pittsburgh Bd. of Pub. Ed.*, 820 A.2d at 841-42.

Finally, we address what factors the Commission should consider, on remand, in determining whether MHS is a public accommodation. MHS asserts there are three: is it open to or solicits or accepts the patronage of the general public; is it a school under the supervision of the Commonwealth; and/or is it distinctly private in nature. The Commission, in contrast, asserts that the Supreme Court in *Lansdowne Swim Club*, addressed only the first and the third factors and, therefore, only those two factors are relevant. However, *Lansdowne Swim Club* did not involve a school or educational entity, but a swimming pool and club, and, therefore, it was not necessary for the Supreme Court to discuss the second factor cited by MHS as relevant in this factual situation. In addition, there is a dispute as to whether, based on the language of Section 4(*l*), supervision of the Commonwealth is a requirement for all educational facilities or entities listed, and, if it is, whether MHS is, factually, under such supervision. Motions Examiner held only that, based on a liberal interpretation of that section, all schools are public accommodations, regardless of whether they are supervised by the Commonwealth, without fully analyzing the issue. Because the issue of jurisdiction is one for the Commission in the first instance, the Commission must resolve this issue, both legally and, if necessary, factually, when determining MHS's status under the Act.

### III. Conclusion

For the foregoing reasons, we vacate the April 16, 2019 Order denying the Motion to Dismiss and finding that MHS is a public accommodation, and we remand for the Commission to hold an evidentiary hearing and issue a new determination regarding MHS's status under the Act. Further, Intervenor's Application is granted in part and denied in part.

 

_____

**RENÉE COHN JUBELIRER,** Judge

 

Judge Fizzano Cannon did not participate in the consideration of this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Milton Hershey School,          :
             Petitioner     :    **CASE SEALED**
                              :
         v.                 :    No. 665 C.D. 2019
                              :
Pennsylvania Human Relations    :
Commission,                   :
            Respondent   :

## O R D E R

**NOW**, November 4, 2019, the April 16, 2019 Order of the Pennsylvania Human Relations Commission is hereby **VACATED**, and this matter is **REMANDED** for further proceedings in accordance with the foregoing opinion. "The Application for Partial and Prospective Reconsideration of the Granting of Petitioner's Application to Seal the Record" filed by Intervenor is **GRANTED IN PART** to the extent that the foregoing opinion is designated a reported opinion, and **DENIED IN PART** to the extent that the case and record otherwise remain sealed.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge