SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,
Appellant

v.

CITY OF PHILADELPHIA and
Philadelphia Commission on
Human Relations.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2011.
Decided April 13, 2011.

Gino J. Benedetti and Katharine V. Hartman, Philadelphia, for appellant.

Eleanor N. Ewing, Philadelphia, for appellee Philadelphia Commission on Human Relations.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge and BUTLER, Judge.

OPINION BY Judge BUTLER.

The Southeastern Pennsylvania Transportation Authority (SEPTA) appeals the November 9, 2009 order of the Court of Common Pleas of Philadelphia County (trial court) sustaining the preliminary objections of the Philadelphia Commission on Human Relations (Commission) and the City of Philadelphia (City), and dismissing SEPTA's claim for failure to exhaust its administrative remedies or make a case for injunctive relief. The issues before this Court are: 1) whether the trial court erred in determining that declaratory relief was not appropriate where SEPTA sufficiently pled that it was not subject to the Commission's jurisdiction because it is a Commonwealth agency and instrumentality; 2) whether the trial court erred in determining that injunctive relief was not appropriate where SEPTA sufficiently pled that denying injunctive relief would cause SEPTA irreparable harm and would preserve the public interest; and 3) whether the trial court erred in dismissing SEPTA's complaint for failing to exhaust administrative remedies based on the reasoning in *Marriott Corp. v. Alexander,* 799 A.2d 205 (Pa.Cmwlth.2002). For the reasons that follow, we reverse the order of the trial court.

Seven separate complaints were initiated with the Commission against SEPTA between 2007 and 2009 pursuant to the Phila-

delphia Fair Practices Ordinance (Ordinance).[1] In each case, SEPTA requested dismissal of the case for lack of jurisdiction, or certification of the case for an appeal to address the jurisdictional issue. The Commission denied SEPTA's requests.

On July 23, 2009, SEPTA filed a complaint for injunctive and declaratory relief in the trial court pursuant to the Declaratory Judgments Act (DJA).[2] SEPTA sought a judgment declaring that the Ordinance could not be enforced against it, and that the Commission was prohibited from exercising jurisdiction over SEPTA under the Ordinance. On July 24, 2009, SEPTA filed a motion for preliminary injunction seeking an order enjoining the Commission from exercising jurisdiction over it. The Commission filed preliminary objections to SEPTA's complaint on August 17, 2009, maintaining that it was legally insufficient and that the Commission could not be sued individually. On August 28, 2009, the Commission responded to SEPTA's motion for preliminary injunction and asserted new matter opposing the imposition of a preliminary injunction.

On September 1, 2009, the trial court granted SEPTA's motion for preliminary injunction on the grounds that the Commission did not file a timely answer. SEPTA responded to the Commission's preliminary objections on September 8, 2009. The Commission filed a motion for reconsideration on September 11, 2009, and

SEPTA opposed the motion for reconsideration. In an order dated September 17, 2009,[3] the trial court vacated the September 1, 2009 order granting SEPTA's motion for preliminary injunction, and further ordered that the merits of SEPTA's motion would be heard. SEPTA replied to the Commission's new matter on October 23, 2009.

A hearing was held on SEPTA's motion for preliminary injunction on November 3, 2009. On November 9, 2009, the trial court sustained the Commission's preliminary objections and dismissed SEPTA's complaint. The trial court never issued an order on the reconsideration of SEPTA's motion for preliminary injunction. SEPTA appealed to this Court.[4]

SEPTA argues first on appeal that the trial court erred in denying its request for declaratory judgment and injunctive relief because it ignored the fact that SEPTA is a Commonwealth agency and, accordingly, the Commission lacks jurisdiction to regulate SEPTA's affairs. It further argues that the Ordinance does not give the Commission explicit jurisdiction over SEPTA. We agree.

The DJA is properly invoked in situations where challenges, particularly constitutional challenges, are set forth questioning the validity of a statute or questioning the scope of a governmental body's action taken pursuant to statutory authority, and that holds true regardless of

1. Section 9–1101—9–3210 of the Philadelphia Code.

2. 42 Pa.C.S. §§ 7531–7541.

3. This order was entered into the docket on October 2, 2009.

4. "Our review from the trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court committed an error of

law or abuse of discretion." *Joloza v. Dep't of Transp.*, 958 A.2d 1152, 1154 n. 1 (Pa. Cmwlth.2008). "This court's review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court committed an error of law or abuse of discretion." *Gallagher v. Chestnuthill Twp.*, 968 A.2d 253, 255 n. 1 (Pa. Cmwlth.2009).

whether an alternative remedy exists. *P.J.S. v. Pennsylvania State Ethics Comm'n,* 669 A.2d 1105 (Pa.Cmwlth.1996). Where an objection to the exercise of jurisdiction by a governmental body goes to the heart of its power, a petition for declaratory relief is appropriate. *Id.* The DJA is meant to be remedial, and "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541(a).

The Pennsylvania Human Relations Act (Act)[5] gives jurisdiction over "employers" to the Pennsylvania Human Relations Commission (PHRC), the statewide commission responsible for enforcing Commonwealth laws that prohibit discrimination. 43 P.S. §§ 956–957. Further, Section 4 of the Act defines an "employer" as:

> *the Commonwealth or any political subdivision or board, department, commission or school district thereof* and any person employing four or more persons within the Commonwealth, but except as hereinafter provided, does not include religious, fraternal, charitable or sectarian corporations or associations, except such corporations or associations supported, in whole or in part, by governmental appropriations. The term 'employer' with respect to discriminatory practices based on race, color, age, sex, national origin or non-job related handicap or disability, includes religious, fraternal, charitable and sectarian corporations and associations employing four or more persons within the Commonwealth.

43 P.S. § 954 (emphasis added). In addition, SEPTA's enabling legislation clearly indicates that it "shall in no way be deemed to be an instrumentality of any city or county or other municipality or engaged in the performance of a municipal function, but shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof." 74 Pa.C.S. § 1711. Clearly then, as an agency and instrumentality of the Commonwealth, SEPTA qualifies as an "employer" for purposes of the Act, subject to the jurisdiction of the PHRC.

It is true, as the Commission argues, that in *Mercy Hospital of Pittsburgh v. Pennsylvania Human Relations Commission,* 499 Pa. 132, 451 A.2d 1357 (1982), the Pennsylvania Supreme Court held, "[t]here is no question that the PHRC is vested with the authority to consider and decide the challenge raised to its jurisdiction over the matter [of racial and national origin discrimination]." *Mercy Hosp.,* 499 Pa. at 137, 451 A.2d at 1359. And it is also true that,

> where the issue of jurisdiction has been raised before the PHRC, the Pennsylvania Supreme Court has determined that the PHRC is vested by the Pennsylvania legislature with the authority to decide challenges to its jurisdiction. The issue of jurisdiction is to be resolved initially by the PHRC during the investigation authorized under the Pennsylvania Human Relations Act. *Pennsylvania Human Relations Commission v. Lansdowne Swim Club,* 515 Pa. 1, 526 A.2d 758 (1987).

*Pittsburgh Bd. of Public Educ. v. Pennsylvania Human Relations Comm'n,* 820 A.2d 838, 841–42 (Pa.Cmwlth.2003). However, the aforementioned cases addressed the jurisdiction of the PHRC, a state agency, not the Commission, a local agency. The PHRC's enabling legislation clearly gives the PHRC, not the Commission, jurisdiction over Commonwealth agencies like SEPTA. The Commission's enabling

---

**5.** Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963.

legislation is not so clear. It is true that Section 7 of the Act allows the PHRC to share its workload with local agencies, since the local agencies have sufficient expertise to investigate discrimination complaints. 43 P.S. § 957; *see also Kedra v. Nazareth Hosp.*, 857 F.Supp. 430 (E.D.Pa. 1994). However, the Act does not expand a local agency's geographical jurisdiction to include cases outside of its geographic boundaries, and it does not expand the subject matter jurisdiction of local agencies.

For purposes of discrimination cases covered under the Act, SEPTA is a Commonwealth agency.[6] As stated, the PHRC's enabling legislation clearly gives the PHRC, not the Commission, jurisdiction over SEPTA as an instrumentality of the Commonwealth in matters involving discrimination. Furthermore, there is no comparable grant of explicit jurisdiction to the Commission through its enabling ordinance, and any such grant would clearly conflict with the PHRC's enabling statute. Thus, we conclude that the trial court erred in sustaining the Commission's preliminary objection for legal insufficiency, thereby denying SEPTA's request for declaratory relief.

Next, SEPTA argues that the trial court's dismissal of SEPTA's claim for injunctive relief resulted from its application of the wrong standard. It further argues that it is not required to *show* irreparable harm and that the injunction will not adversely affect the public interest, in order to survive preliminary objections. SEPTA contends that to withstand the preliminary objection it needed only to properly *plead* its claim for injunctive relief. We agree.

For a "party to prevail on preliminary objections in the nature of a demurrer to such a claim for injunctive relief, the court must find that the petition is clearly insufficient to establish a right to injunctive relief, and any doubt must be resolved in overruling the demurrer." *P.J.S.*, 669 A.2d at 1113. In order for SEPTA to prevail on a petition for injunctive relief, it needed only:

> establish that [its] right to relief is clear; that there is an urgent necessity to avoid an injury which cannot be compensated for by damages; and the greater injury will result from refusing rather than granting the relief requested. This Court is precluded from granting injunctive relief where an adequate remedy exists at law.

*P.J.S.*, 669 A.2d at 1113 (citing *Merchant v. State Bd. of Medicine*, 162 Pa.Cmwlth. 332, 638 A.2d 484, 487 (1994)). Since the Commission does not have jurisdiction over SEPTA, the petition is not clearly insufficient to establish SEPTA's right to injunctive relief. Therefore, the trial court erred in sustaining the preliminary objection to SEPTA's claim for injunctive relief.

Finally, SEPTA argues that the trial court erred in dismissing its complaint on the basis that SEPTA failed to exhaust administrative remedies. We agree.

It is well established that a plaintiff must exhaust all administrative remedies available through the PHRC before filing a civil action alleging discrimination. *See Pergine v. Penmark Mgmt. Co., Inc.*, 314 F.Supp.2d 486 (E.D.Pa.2004); *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989); *Marriott Corp.* 799 A.2d at 208. In addition,

---

**6.** The decision in this case should in no way be interpreted as stating that SEPTA qualifies as a Commonwealth agency in every conceivable circumstance, because that is not the case. *See SEPTA v. Union Switch & Signal, Inc.*, 161 Pa.Cmwlth. 400, 637 A.2d 662 (1994); *Scott v. Shapiro*, 19 Pa.Cmwlth. 479, 339 A.2d 597 (1975).

"[f]iling a complaint with the [Commission] satisfies the Pennsylvania [Human Relations] Act's requirement that a plaintiff exhaust administrative remedies." *Marriott Corp.*, 799 A.2d at 208.

Further:

'In instances where it is unclear whether a particular agency possesses the jurisdiction to consider a claim before it, the courts of the Commonwealth have repeatedly refrained from interfering with the due course of administrative action, allowing the agency to determine the extent of its jurisdiction in the first instance.' *Cornerstone Family Services, Inc. v. Bureau of Professional and Occupational Affairs*, 802 A.2d 37, 40 (Pa. Cmwlth.2002).

*Pittsburgh Bd. of Public Educ.*, 820 A.2d at 842. However, in situations where jurisdiction is clearly given to the PHRC over Commonwealth agencies like SEPTA, there is no need to litigate discrimination cases before the Commission as a means of exhausting administrative remedies before a determination as to jurisdiction may be made. Here, the issue of jurisdiction is not unclear. The Act gives the PHRC jurisdiction over SEPTA, thereby rendering it appropriate for this Court to "interfere" with the administrative action. Moreover, SEPTA is challenging the scope of governmental body's action pursuant to statutory authority, which is a proper challenge under the DJA.

Furthermore, it must be noted that SEPTA is not an individual filing a civil action complaining of discrimination. SEPTA is an instrumentality of the Commonwealth appropriately seeking a declaration as to the Commission's exercise of jurisdiction over SEPTA and corresponding injunctive relief. We hold, therefore, that the exhaustion doctrine is not implicated in the matter before the Court.

For the reasons stated above, we reverse the order of the trial court.

## ORDER

AND NOW, this 13th day of April, 2011 the November 9, 2009 order of the Court of Common Pleas of Philadelphia County is reversed.

## DISSENTING OPINION BY Judge PELLEGRINI.

This matter arose when Southeastern Pennsylvania Transportation Authority (SEPTA) requested that the Philadelphia Commission on Human Relations (PCHR) dismiss seven separate complaints filed by individuals, both employees and passengers, between 2007 and 2009, claiming violations of the Philadelphia Fair Practices Ordinance (Ordinance), Section 9–1101—9–3210 of the Philadelphia Code, alleging that the PCHR lacked jurisdiction. After the PCHR denied dismissal, SEPTA sought a declaratory judgment with an attendant request for a preliminary injunction in the Philadelphia Court of Common Pleas (trial court) alleging that the Ordinance could not be enforced against it because it was a Commonwealth agency. The PCHR filed preliminary objections to the complaint alleging, *inter alia*, that it had jurisdiction over SEPTA, that jurisdictional challenges to local agency jurisdiction had to be resolved by the agency and after a decision on the merits, and that an appeal of the local agency's decision could be taken to the courts. The trial court granted the PCHR's preliminary objections and dismissed the complaints because the PCHR's investigations were still in progress, no judgment on the merits had been entered on any of the complaints, and SEPTA's request for relief was premature. SEPTA contends, among other issues, that the trial court erred because SEPTA is a

Commonwealth agency and the PCHR lacks jurisdiction to regulate its affairs.

The majority, in reversing the trial court, finds that SEPTA is a Commonwealth agency because SEPTA's enabling legislation provides that SEPTA may "exercise the public powers of the Commonwealth as an agency and instrumentality thereof." 74 Pa.C.S. § 1711. I respectfully dissent from the majority holding that the PCHR lacks jurisdiction to investigate complaints against SEPTA because:

- even though SEPTA "exercise[s] the public powers of the Commonwealth as an agency and instrumentality thereof," that does not make it part of the Commonwealth for all purposes, or for that matter, any purpose. All that it means is that it is a separate and distinct entity and not part of the governmental entity that formed it.
- even if it was considered a commonwealth agency, the PCHR has jurisdiction over SEPTA.

## I.

The difficulty in determining the status of SEPTA or, for that matter, any authority, is directly related to the reasons behind their creation and authorization by the General Assembly. Although authorities owe their existence to the various units of government and their governing boards are appointed by those entities, they are not considered part of the normal governmental structure. Unlike municipal corporations that have "governmental" and "proprietary" functions, authorities engage only in the latter. Authorities are "public corporations, being corporate agencies engaged in the administration of civil government." [1] *Lighton v. Abington Township*, 336 Pa. 345, 354, 9 A.2d 609, 613 (1939). Generally, authorities are established for the purpose of financing and managing various revenue producing projects of a public nature or other activities that are not considered to be part of core governmental activities; they are a governmental business venture, a form of quasi-privatization. The circumstances prompting their creations are usually for one or more of the following reasons:

- the need for an administrative agency to manage public enterprises which, in certain cases, have commercial characteristics, e.g., Metropolitan Transportation Authorities (SEPTA); Parking Authorities;
- the need for an agency which can cross governmental boundary lines for the effective handling of intercommunity problems, e.g., SEPTA;
- to avoid constitutional and statutory restrictions. For example, prior to the enactment of the amendment contained in Article 9, Section 9 to the Pennsylva-

---

1. There are a number of statutes authorizing the creation of authorities. Most authorities are formed under the Municipal Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§ 301–374. The 1945 Act was repealed by the Act of June 19, 2011, P.L. 287; *see now* 53 Pa.C.S. §§ 5601–5623. The types of authorities created by local governments under its provisions are many, including School Authorities (issue bond to build schools and then lease them back to the school district); Water and Sewer Authorities, Airport Authorities and Recreation Authorities. Other statutes authorize local governments to create authorities for specific purposes, the most important being the Housing Authorities Law, Act of May 28, 1937, P.L. 955, *as amended*, 35 P.S. §§ 1541–1568.1; the Parking Authorities Law, Act of June 5, 1947, P.L. 458, *as amended*, 53 P.S. §§ 341–356; the Economic Development Financing Law, Act of August 23, 1967, P.L. 1967, *as amended*, 73 P.S. §§ 371–376; and the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701–1747. The Parking Authorities Law was also repealed by the Act of June 19, 2011, P.L. 287.

nia Constitution, local governments had very low debt limits, and creating authorities allowed them to finance public improvements without conflicting with the constitutional limits on debt. Prior debt limits were based on real estate values. Article 9, Section 9. (*See Lesser v. Warren Borough*, 237 Pa. 501, 85 A. 839 (1912)). More recently they are used to give funds to private developers which would be constitutionally proscribed by Article 9, Section 9 of the Pennsylvania Constitution.[2] Also, they allowed cities to engage in activities not authorized by their respective municipal or county codes, e.g., public housing.[3]

Because of the need to get around these constitutional impediments, the legislation authorizing the creation of authorities contains language that the authority is not an agency of the governmental unit(s) that creates it and appoints its board members, but is considered an agency of the Commonwealth. Typical of the language contained in most acts is the language contained in Section 1711 of the Metropolitan Transportation Authorities Act, 74 Pa. C.S.A. § 1711, which states that:

> An authority shall in no way be deemed to be the instrumentality of any city or county or other municipality or engaged in the performance of a municipal function, but shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof.

While authorities may be denominated as an "instrumentalit[ies] of the Commonwealth," that does not mean that they are automatically considered to be "the Commonwealth" for all purposes. Traditionally, to determine whether they should be considered "the Commonwealth," we have examined the intent of the General Assembly in enacting a particular piece of legislation that the authority said did not apply to them.

While it will be shown that SEPTA is not a Commonwealth agency under that test, I would suggest this test has been used so as not to implicate the constitutional and statutory restrictions that were sought to be avoided. However, we have never focused on what is meant by the term "agent or instrumentality of the Commonwealth." All that term means is that an authority is a separate and distinct entity—a separate form of government— and not the creature, agent or representative of those governmental bodies organizing it. Like municipalities, counties and school districts, which are also agents and instrumentalities of the Commonwealth, authorities are just another form of government, not a Commonwealth agency.

### A.

Just like authorities, municipalities are agents of the Commonwealth. In *City of Pittsburgh v. Commonwealth*, 468 Pa. 174, 360 A.2d 607 (1976), where our Supreme Court held that the Department of Corrections had to comply with local zoning, it noted that municipalities are agents of the Commonwealth. Quoting from *Commonwealth v. Moir*, 199 Pa. 534, 541, 49 A. 351, 352 (1901), it stated:

> Municipal corporations are agents of the state, invested with certain subordinate

---

2. Article 9, Section 9 of the Pennsylvania Constitution provides, in relevant part:
   The General Assembly shall not authorize any municipality or incorporated district to ... obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual.

3. See generally *Southeastern Pennsylvania Transportation Authority v. Union Switch & Signal, Inc.*, 161 Pa.Cmwlth. 400, 637 A.2d 662, petition for allowance of appeal denied, 538 Pa. 662, 648 A.2d 792 (1994).

governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined by the Legislature and subject to change, repeal or total abolition at its will.

> Cf. *Warren Borough v. Willey*, 359 Pa. 144, 146, 58 A.2d 454, 455 (1948). See also Pa. Const., Art. 9, s 1; *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962).

*City of Pittsburgh*, 468 Pa. at 179, 360 A.2d at 610. *See also Department of General Services v. Ogontz Area Neighbors Association*, 505 Pa. 614, 483 A.2d 448 (1984), where a city was denominated as an "instrumentality" of the Commonwealth.

Similarly, the county is an agent of the state because its main purpose is to aid the state in the administration of justice, the keeping of legal records, the conduct of elections and the administration of poor relief. *See* Article IV, Section 4 of the Pennsylvania Constitution. *Court of Common Pleas of Lackawanna County v. Pennsylvania Office of Open Records*, 2 A.3d 810, 813 (Pa.Cmwlth.2010). "A county organization is created almost exclusively with a view to the policy of the state at large. . . . With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are in fact but a branch of the general administration of that policy." *Garr v. Fuls*, 286 Pa. 137, 145, 133 A. 150, 153 (1926). Though over the years the counties have been granted some powers more commonly considered local and overlap with municipalities, at least for non-home rule counties, counties are still considered political subdivisions of the Commonwealth, not municipalities. *Ricketts v. Allegheny County*, 409 Pa. 300, 306, 186 A.2d 249, 253 (1962); *Hartness v. Alleghe-*

*ny County*, 349 Pa. 248, 250, 251, 37 A.2d 18, 19 (1944); *Com. v. Brice*, 22 Pa. 211 (1853); *Commonwealth ex rel. Woods v. Walker*, 305 Pa. 31, 156 A. 340 (1931).

Finally, school districts, the other major form of government, are considered agents of the Commonwealth to carry out the Commonwealth obligations under Article III, Section 14 of the Pennsylvania Constitution to "provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." "It is well established that the local school districts are merely agents of the Commonwealth to which the legislature has delegated authority in order to fulfill the state's responsibility to provide public education." *Pennsylvania Federation of Teachers v. School District of Philadelphia*, 506 Pa. 196, 199, 484 A.2d 751, 753 (1984); *see also Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 211 A.2d 487 (1965); *Wilson v. Philadelphia School District*, 328 Pa. 225, 195 A. 90 (1937); *Lysicki v. Montour School Dist.*, 701 A.2d 630 (Pa.Cmwlth.1997).

SEPTA also contends that because it has been given "sovereign immunity," it somehow is part of the Commonwealth government, which takes away the PCHR's jurisdiction. First, just because the General Assembly has seen fit to give an agency "sovereign immunity" rather than "governmental immunity" means nothing; it is just a determination by the General Assembly as to what type of immunity fits that particular agency. Even though prior to the abolishment of court-created tort immunity the counties enjoyed sovereign immunity because they were subdivisions of the state, *Hartness*, they are now covered by the provisions of the Political Subdivision Tort Claims Act,[4] not the Sovereign Immunity Act. If the Gener-

---

4. 42 Pa.C.S. §§ 8542–8564.

al Assembly wanted to enact a separate Authorities Act, say, making an exception to immunity common carrier liability, it could do so. Second, all tort immunity is sovereign immunity, no matter what it is called because no matter what version, it is enacted pursuant to Article I, Section 11 of the Pennsylvania Constitution which provides that "Suits may be brought against the Commonwealth in such manner and in such cases as the Legislature may by law direct" and that the Legislature's authority "to choose cases in which the Commonwealth should be immune" encompasses political subdivisions because they are agents of the state. *Carroll v. York County*, 496 Pa. 363, 437 A.2d 394 (1981). Finally, "[w]hether an entity is the "Commonwealth government" for the purposes of jurisdiction or a "Commonwealth agency" for the purposes of immunity from suit in tort are totally distinct issues." *Quinn v. Southeastern Pennsylvania Transp. Authority*, 659 A.2d 613, 616 (Pa.Cmwlth. 1995).

Authorities, while separate and distinct entities from the entity that created them, do not have an exalted status that would make them Commonwealth agencies when municipalities, counties and school districts which carry out the Commonwealth's responsibility to provide public safety, streets and highways, administration of justice and constitutionally-mandated education are not.

## B.

I now return to a traditional analysis of whether SEPTA enjoys the same immunity that the Commonwealth enjoys because it is an instrumentality and agent of the Commonwealth. This is done by looking at legislative intent. The case most similar is *Fisher v. Southeastern Pennsylvania Transportation Authority*, 60 Pa. Cmwlth. 269, 431 A.2d 394, 397 (1981),

where we addressed the issue of whether the General Assembly intended SEPTA to be considered "the Commonwealth" as that term is used in Section 1 of the Act of July 12, 1935, P.L. 677, *as amended*, 65 P.S. § 114, *repealed* by the Act of November 1, 2005, P.L. 327, No. 62, § 2, retroactive effective January 1, 2005, which deals with payment of salaries of employees in the reserve component of the military. That section provides that all officers and employees of the Commonwealth are entitled to a leave of absence from their duties without loss of pay when they are absent from work while in active service with the reserve units of the United States Armed Forces. Holding that SEPTA was not "the Commonwealth" and its employees were not entitled to back pay when absent from work while in the military service, we stated:

> [W]e do not go so far as to suggest that whenever a legislative enactment refers to the 'Commonwealth', it means to embrace all authorities created by virtue of enabling acts. Furthermore, neither authorities nor municipalities are sovereign; they have no original or inherent or fundamental powers of sovereignty or of legislation; they have only the power and authority granted them by enabling legislation.... The legislature many years ago recognized the need for efficient and inexpensive mass transportation systems designed to alleviate serious traffic difficulties in the overcrowded metropolitan areas of the Commonwealth. Thus, SEPTA and other transportation authorities were created pursuant to legislative guidelines designed to provide independent operating powers with minimal local government interference. The grant of broad powers by the Legislature was meant to insure efficient operation of the integrated transportation networks, not to expand the already large and complex state bureau-

cratic system. *We do not believe that the Legislature intended SEPTA to be a Commonwealth agency in the traditional sense or for SEPTA employees to be considered Commonwealth employees for purposes of other legislative enactments.* (Emphasis added.) 431 A.2d at 396, 397.

As *Fisher* holds, SEPTA's purpose was to insure efficient mass transit, not to include it in an already large state bureaucracy. SEPTA seems to recognize this when it wants to deny benefits to its employees, but changes its position to shield itself from claims of insidious discrimination. Moreover, while the PCHR has jurisdiction given to it by the Ordinance, the term "legislative enactment" is broad enough to encompass the Ordinance, especially when the Ordinance was enacted pursuant to a direct grant of power by the General Assembly to local governments to enact their own human relations ordinances to wipe out insidious discrimination.

## II.

Even if it is considered to be part of the Commonwealth government, the PCHR would still have jurisdiction over claims of unlawful discrimination.[5] Implicit in SEPTA's argument is that if it is part of the Commonwealth government, then it would automatically be immune from jurisdiction from the PCHR because the Ordinance would not apply to it, and it only would be subject to the provisions of the PCHR. In *Ogontz Area Neighbors Association,* the issue before the Supreme Court was whether the Department of General Services was required to comply with the

Philadelphia Zoning Code in establishing a mental health facility. In holding that it was, our Supreme Court observed that:

> The conflict . . . is not a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state. The legislature has the power to regulate both of these governmental entities, enlarging or restricting their authority to act; and, generally, the task of courts in these cases is to determine, through an examination of the enabling statutes applicable to each of the governmental entities, which the legislature intended to have preeminent powers. The problem, essentially, is one of statutory interpretation.

*Ogontz,* 505 Pa. at 622–623, 483 A.2d at 452. *See also Pennsylvania Gaming Control Bd. v. City Council of Philadelphia,* 593 Pa. 241, 263, 928 A.2d 1255, 1268 (2007). *Ogontz* holds that the "statutory construction rule that legislative intent may be determined by a consideration, inter alia, of the consequences of a particular interpretation, Statutory Construction Act, 1 Pa.C.S. § 1921(c)(6)" was to be used to determine what "instrumentality of the Commonwealth" was to be preeminent—in this case, the City of Philadelphia or SEPTA. *Id.,* 505 Pa. at 622, 628, 483 A.2d at 455.

Before making that analysis, just as they have been authorized to enact zoning ordinances, Philadelphia and other local governments have been specifically authorized to enact legislation to establish a human relations commissions with powers similar to that of the Pennsylvania Human

---

**5.** SEPTA makes the absurd argument that because it operates throughout southeastern Pennsylvania, the Philadelphia Human Relations Commission does not have jurisdiction. That would base jurisdiction on the locus or, more accurately, the multi-locus of the company, not the locus of the act of claimed discriminations. Under SEPTA's position, the Pennsylvania Commission on Human Relations would not have jurisdiction over companies that operate in several states.

569 P.S. § 962.1(a)

Relations Commission. 43 P.S. § 962.1(a) provides "the legislative body of a political subdivision may, by ordinance or resolution, authorize the establishment of membership in and support of a Local Human Relations Commission."[6] Subsection (d) goes on to provide that "the legislative bodies of political subdivisions shall have the authority to grant to local commissions powers and duties similar to those now exercised by the PHRC under the provisions of this act."

The PCHR was established by the Philadelphia Home Rule Charter. The PHRC has been granted powers and duties similar but not identical to that of the Pennsylvania Human Relations Commission by the Philadelphia Fair Practices Ordinance, being more expansive because it covers more subjects of discrimination, e.g., sexual orientation. The net effect is that there is largely concurrent jurisdiction between the Philadelphia and Pennsylvania Human Relations Commissions with each to report to the other complaints within their respective jurisdictions. Section 7 of the Pennsylvania Human Relations Act, 43 P.S. § 957; Section 8.2 of the Pennsylvania Human Relations Act, 43 P.S. § 962.1(e). The Pennsylvania Human Relations Commission is also allowed to share its workload with the PHRC, presumably involving complaints against SEPTA, if someone decided to file with the PCHR. 43 P.S. § 957.

In this case, under the statutory analysis test prescribed by *Ogontz*, the consequence of holding that SEPTA should be preeminent over the City would frustrate the General Assembly's legislative scheme to give concurrent jurisdiction to both state and local human relations commissions over claims of invidious discrimination. On the other hand, if the City and the PCHR are preeminent, that would not interfere with SEPTA's purpose of providing public transportation. All the consequence of the City's and the PCHR's preeminence means is that SEPTA would still have to respond to complaints, like private companies, of those choosing to file their claims of unlawful discrimination with that agency. The consequence is even less if considering that they would have to respond to many of those same complaints if a person would be forced to file with the Pennsylvania Human Relations Commission. Although the General Assembly's desire for local commissions to have similar powers to the PCHR to root out insidious discrimination at the local level would have serious consequences in general, the consequences for SEPTA, specifically, would be *de minimis*, even if we were to consider it a state agency, which it is not. Of course, should the legislature determine that SEPTA should not be subject to local human relations regulations, it need only pass legislation to that effect.

Because SEPTA is not a Commonwealth agency and even if it was, it is still subject to the jurisdiction of the Philadelphia Commission on Human Relations, I respectfully dissent.

---

6. Section 12.1 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended, added by* Section 3 of the Act of January 24, 1966, P.L. (1965), *as amended*, 43 P.S. § 962.1.