**[J-65-2013] [MO: McCaffery, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, | : | No. 20 EAP 2013 |
| | : | |
| | : | Appeal from the Order of Commonwealth |
| Appellee | : | Court entered on April 13, 2011 at No. |
| | : | 2445 CD 2009, reversing the Order |
| | : | entered on November 10, 2009, in the |
| v. | : | Court of Common Pleas, Philadelphia |
| | : | County, Civil Division at No. 3055 July |
| | : | Term, 2009 |
| CITY OF PHILADELPHIA AND | : | |
| PHILADELPHIA COMMISSION ON | : | 20 A.3d 558 (Pa. Cmwlth. 2011) |
| HUMAN RELATIONS, | : | |
| | : | |
| Appellants | : | ARGUED: September 11, 2013 |

**CONCURRING AND DISSENTING OPINION**

**MR. CHIEF JUSTICE CASTILLE**                    **DECIDED: September 24, 2014**

I concur with the Majority's conclusion that SEPTA was not required to exhaust administrative remedies within the Philadelphia Commission on Human Relations ("Commission") prior to turning to our courts for a declaratory judgment as to the legal question of whether the Commission has jurisdiction over SEPTA concerning the City of Philadelphia's ("City") Fair Practices Ordinance ("FPO"). I respectfully dissent, however, from the Majority's conclusion that the analysis set forth in Department of General Services v. Ogontz Area Neighbors Association, 483 A.2d 448 (Pa. 1984), and later employed in similar land use cases, represents the proper analysis for determining whether SEPTA is subject to the FPO such that it may be compelled to appear before the Commission to participate in proceedings adjudicating SEPTA's alleged violations of

the FPO - an issue not presented in Ogontz or its progeny. In my view, SEPTA is not properly subject to the FPO, and the Ogontz test, employed by this Court to date in resolving conflicts between governmental entities concerning the use of land, is inapposite to resolving the issue presented in this case.

In Ogontz, this Court was called upon to determine: "whether the Zoning Board of Adjustment of the City of Philadelphia . . . ha[d] the power to enforce its regulations as to use and structural requirements for buildings against the Department of General Services, an agency of the Commonwealth." Id. at 449. Similarly, in County of Venango v. Borough of Sugarcreek, Zoning Hearing Board, 626 A.2d 489 (Pa. 1993), the second case upon which the Majority relies, this Court was called upon to determine "whether the powers of Venango County . . . [were] pre-eminent over the Zoning Ordinance adopted by Sugarcreek Borough . . . ." Id. at 489. Likewise, in Hazleton Area School District v. Zoning Hearing Board, 778 A.2d 1205 (Pa. 2001), the third case upon which the Majority relies, this Court was called upon to determine "whether the authority granted to a school district under the Public School Code . . . preempt[ed] the powers . . . granted to a local zoning hearing board under the Municipalities Planning Code . . . ." Id. at 1207. While each of those cases referenced the Ogontz test in resolving the governmental land use disputes at issue therein, unlike the present case, none of those cases involved an attempt to haul a Commonwealth agency before a city, township or borough, for an adjudication concerning any alleged violation of civil rights conferred by the municipality alone upon private individuals.

In Ogontz, the dispute concerned the City's denial of the agency's application for construction permits relative to building a proposed facility, where the proposed use thereof was not permitted by the applicable zoning ordinance, and the building as proposed was not in conformity with applicable sections of the Philadelphia Code. Part

of the dispute, ultimately, was the issue of whether the City, specifically the City's zoning board, had jurisdiction over the Commonwealth agency. In resolving the dispute, the Ogontz Court observed that municipal corporations, such as the City, are subject to regulation by the state, having been created, governed, and having the extent of their powers determined by the General Assembly, generally subject to change, repeal or abolition at the will of the General Assembly. Accord Robinson Township v. Commonwealth, 83 A.3d 901, 977 (Pa. 2013). In contrast, the Court observed that Commonwealth agencies derive their powers from their enabling statutes. Thus, the Court explained that the conflict at issue was that which "arises when a Commonwealth agency seeks to utilize real property in a manner that conflicts with a municipal corporation's zoning regulations," and that such a conflict "is not a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state." Ogontz, 483 A.2d at 452.

Within that context, the Court went on to explain:

> The legislature has the power to regulate both of these governmental entities, enlarging or restricting their authority to act; and generally, the task of courts **in these cases** is to determine, through an examination of the enabling statutes applicable to each of the governmental entities, which the legislature intended to have preeminent powers. The problem, essentially, is one of statutory interpretation.

Id. (emphasis added) (citing Township of South Fayette v. Commonwealth, 385 A.2d 344 (Pa. 1978) (dispute concerning Commonwealth operation of treatment unit for delinquent juveniles in violation of township zoning ordinance); City of Pittsburgh v. Commonwealth, 360 A.2d 607 (Pa. 1976) (dispute between municipality and Bureau of Corrections as to whether municipality's zoning authority preempted Bureau's authority to establish pre-release facilities); and Pemberton Appeal, 252 A.2d 597 (Pa. 1969) (dispute between school district and township as to whether township could exclude

schools from certain areas through zoning regulations)). The Court indicated that its allowance of appeal was occasioned, at least in part, by the fact that prior to Ogontz, this Court had yet to formulate "[a] general rule as to the precise circumstances under which a Commonwealth agency's land use determinations will prevail over the land use regulations of a local zoning board[.]" Id. Thus, this Court set out to establish such a general rule by looking to "these cases," *i.e.*, prior cases involving land use determinations by Commonwealth agencies that conflicted with those of local zoning boards. See Twp. of South Fayette; City of Pittsburgh; and Pemberton Appeal. Not surprisingly, this Court observed that: "The common thread running through these cases is the assertion that [w]hen there is an apparent conflict in the use of land use powers[,] we must look to the intent of the Legislature to determine which exercise of authority is to prevail." Id. at 453-54 (internal citation omitted).

The following statement by the Court is critical, I believe, to our determination as to whether the analysis in Ogontz is applicable to the instant matter:

> When we approach this task . . . we are immediately faced with a paradox: determination of legislative intent as to priority of the two governmental entities is necessary to decide the case, **but that intent is indecipherable from the applicable statutes**. Having rejected balancing, and **being unable to determine legislative intent as to which agency is to prevail**, we turn to the statutory construction rule that legislative intent **may** be determined by a consideration, *inter alia*, of the consequences of a particular interpretation. Statutory Construction Act, 1 Pa.C.S.A. § 1921(c)(6). The consequences of deciding that the Commonwealth should be preeminent in this matter are that Philadelphia's zoning scheme would be frustrated in this case and in every other case where a Commonwealth land use plan conflicted with the city plan.

Id. at 455 (emphasis added).

Ultimately, the Court concluded:

> [D]eciding that the city's zoning authority supersedes that of the Commonwealth agency to establish a mental health facility in a particular geographical location arguably would give effect to the legislative mandates of both governmental entities, a consequence which, **absent more certain legislative direction**, seems advisable. Accordingly, we hold that DPW is subject to the jurisdiction of the Zoning Board and that in the case of a conflict between DPW's land use plans and the zoning use regulatory scheme of Philadelphia, the zoning scheme shall prevail. **We decline to infer a legislative intent that the Commonwealth agency has preemptive land use powers.** Of course, should the legislature determine that one or more Commonwealth agencies or projects should be empowered to supersede local land use regulations, it need only pass legislation to that effect.

Id. (emphasis added).  Ogontz makes perfect sense given its land use context.

Consistently, and as the Majority concedes, in County of Venango and in Hazleton Area School District, this Court has indeed applied the general rule set forth in Ogontz to resolve apparent conflicts involving governmental land use powers.  In County of Venango, the county sought to construct a new jail upon county owned land located within the Borough of Sugarcreek, and zoned as a residential area not permitting the proposed use.  In Hazleton Area School District, the district sought to rent-out its athletic fields within Hazle Township for baseball games when such use was not permitted by the Township's zoning ordinances.  In each of those governmental land use cases, the Ogontz analysis was helpful and appropriate in resolving the land use conflicts between governmental entities.  Contrary to the Majority's suggestion here, however, while we observed in Hazleton that the Ogontz Court "employed **a** two-step process for analyzing conflicting statutes[,]" Hazleton Area School District, 778 A.2d at 1210 (emphasis added), we did not hold that Ogontz sets forth **the** analytical process which every court must follow in resolving every conflict that arises between every governmental entity in order to determine legislative intent, and we certainly did not

purport to mandate a legislative, or myopic, approach to be employed without regard to the context of the conflict at issue.

Respectfully, there is nothing in this Court's opinion in Ogontz indicating that the Court intended to stray from its adjudicative role and establish a quasi-legislative rule requiring a mandatory two-step process in the lower courts in every case involving disputes between Commonwealth agencies and municipalities whereby courts must first determine whether one entity holds preeminence over another, and then determine legislative intent as to which legislatively-created entity is to prevail exclusively by considering the consequences of proffered interpretations. In my view, when employed outside of its land use context, Ogontz at most stands for the general proposition that the General Assembly's intent is the controlling factor in conflicts respecting the exercise of statutory authority, and where such intent is not apparent on the face of the applicable statutes, that intent should be ascertained by turning to the Rules of Statutory Construction, which permit (but do not mandate) consideration of the consequences of competing interpretations. See generally 1 Pa.C.S. § 1921. Beyond that unremarkable general proposition, I believe that the analysis in Ogontz has its application only in the limited context of "the conflict that arises when a Commonwealth agency seeks to utilize real property in a manner that conflicts with a municipal corporation's zoning regulations," where the General Assembly's "intent is indecipherable from the applicable statutes" and "absent more certain legislative direction," as the Court stated. Ogontz, *supra*. Such is clearly not the context of this case.

Here, there is no dispute concerning a Commonwealth agency's use of real property. Rather, this case is about whether SEPTA can be hauled before the City's Commission and held liable for conduct which allegedly violates the City's FPO, but which otherwise violates no provisions of law enacted by the Commonwealth or federal

governments. This is also not a case of indecipherable legislative intent, or the absence of legislative direction. On the contrary, SEPTA's enabling statute explicitly provides:

> It is hereby declared to be the intent of the General Assembly that an authority created or existing under this chapter . . . and the members, officers, officials and employees of any of them, **shall continue to enjoy sovereign and official immunity, as provided in 1 Pa.C.S. § 2310** (relating to sovereign immunity reaffirmed; specific waiver), **and shall remain immune from suit except as provided** by and subject to the provision of 42 Pa.C.S. §§ 8501 (relating to definitions) through 8528 (relating to limitations on damages).

Section 1711 of the Metropolitan Transportation Authorities Act (MTAA), 74 Pa.C.S. § 1711(c)(3) (emphasis added). Thus the General Assembly's intent that SEPTA be held immune from suit except as provided by the General Assembly is abundantly clear. Goldman v. SEPTA, 57 A.3d 1154, 1180 (Pa. 2012) ("We agree with SEPTA that this language establishes that SEPTA has been statutorily classified by the legislature as an agency of the Commonwealth.") (citing SEPTA v. Board of Revision of Taxes, 833 A.2d 710, 716 (Pa. 2003) ("SEPTA is part of the sovereignty of the Commonwealth and the property owned by SEPTA is presumed to be immune from taxation."); Tulewicz v. SEPTA, 606 A.2d 427, 430 (Pa. 1992) ("SEPTA, by virtue of its enabling legislation, qualifies as a Commonwealth agency."); and Feingold v. SEPTA, 517 A.2d 1270, 1276-77 (Pa. 1986) ("we have no hesitation in concluding that SEPTA was intended to be considered an agency of the Commonwealth. . . . Therefore, we conclude that it would be inappropriate to assess punitive damages against SEPTA given its status as a Commonwealth agency.")). Thus, although SEPTA is obviously not the Commonwealth, by express legislative direction SEPTA is protected from suit, even in administrative proceedings, by virtue of its creation and existence within, and coverage by, the sovereignty of the Commonwealth. See, e.g., Frazier v. W.C.A.B. (Bayada

<u>Nurses, Inc.)</u>, 52 A.3d 241, 243 (Pa. 2012) (holding employer's workers' compensation subrogation claim concerning settlement monies paid by SEPTA as Commonwealth party was barred pursuant to statute affirming sovereign immunity of political subdivisions); <u>see</u> <u>also</u> <u>Warrick v. Pro Cor Ambulance, Inc.</u>, 709 A.2d 422, 425 (Pa. Cmwlth. 1997) ("[S]ection 1711(c)(3) of the Act shows the intent of the General Assembly to continue SEPTA's entitlement to sovereign immunity absent an exception"), *aff'd without opinion by* <u>Warrick v. Pro Cor Ambulance, Inc.</u>, 739 A.2d 127 (Pa. 1999). Moreover, the General Assembly has provided no exception that would allow the City to subject SEPTA to civil rights ordinances adopted by political subdivisions imposing obligations over and above the General Assembly's state-wide civil rights provisions.

Notwithstanding the statutory language and significant body of caselaw confirming the immunity from suit that SEPTA holds in this Commonwealth absent applicable exception, the City's position is that SEPTA is subject to adjudication before the Commission under the City's FPO. In my view, the City plainly has overstepped its authority, and no newly clarified two-step process credited exclusively in the past to land use cases is necessary to reach that determination. Indeed, a review of <u>Ogontz</u> and its progeny, and review of the relied-upon statutory construction rules cited therein, all point to the same conclusion: where the intent of the General Assembly is clear from a plain reading of applicable statutes, there is no need for a statutory construction analysis considering the supposed consequences of proffered interpretations in order to ascertain and effectuate legislative intent. What is required, simply stated, is application of the relevant statutory language as written.

In my view, the Commonwealth Court sufficiently accomplished that below, notably, by way of a 6-1 *en banc* decision that assessed legislative intent by not only

looking to SEPTA's enabling legislation, but also to that of the Pennsylvania Human Relations Commission, to make two specific points which relate to legislative intent. First, referencing the Pennsylvania Human Relations Act, the court observed that the General Assembly granted jurisdiction over Commonwealth employers to the Pennsylvania Human Relations Commission for adjudication of matters concerning Commonwealth laws that prohibit discrimination. Then, referencing SEPTA's enabling legislation, the MTAA, the court observed the statutory language setting forth the General Assembly's declaration that SEPTA shall in no way be deemed an instrumentality of any municipality, and the legislative determination that SEPTA instead exists as an agency and instrumentality of the Commonwealth. The court concluded: "Clearly then, as an agency and instrumentality of the Commonwealth, SEPTA qualifies as an 'employer' for purposes of the [Human Relations] Act, subject to the jurisdiction of the [Pennsylvania Human Relations Commission]. . . . " SEPTA v. City of Philadelphia, 20 A.3d 558, 561 (Pa. Cmwlth. 2011). The court further stated:

> For purposes of discrimination cases covered under the [Human Relations] Act, SEPTA is a Commonwealth agency. As stated, the [Pennsylvania Human Relations Commission]'s enabling legislation clearly gives the [Pennsylvania Human Relations Commission], not the [Philadelphia] Commission, jurisdiction over SEPTA as an instrumentality of the Commonwealth in matters involving discrimination.

Id. at 562. In my view, this straightforward analysis is obviously correct. No remand to assess legislative intent is called for in this matter because the Commonwealth Court appropriately ascertained and effectuated the General Assembly's intent by looking to, and applying, the plain language of the relevant statutory provisions. As this Court demonstrated in Board of Revision of Taxes, the Ogontz analysis identified by the Majority here is neither required, nor necessary; and the fact that the local legislation at

issue strikes some as socially or politically progressive does not change the Court's interpretive duty.

In Board of Revision of Taxes, a case decided nearly twenty years after Ogontz, ten years after County of Venango and two years after Hazleton Area School District, this Court resolved the issue of whether property owned by SEPTA and leased to commercial tenants is immune from local taxation by the Board of Revision of Taxes of the City of Philadelphia, and did so without reference to the Ogontz/Venango/Hazleton test that the Majority now promotes as mandatory. The Court noted that as a general matter, property owned by a Commonwealth agency such as SEPTA is immune from local taxation absent express statutory authority to tax. The Court further explained:

> It cannot be presumed that general statutory provisions giving local subdivisions the power to tax local real estate, were meant to include property owned by the Commonwealth, since to allow such taxation would upset the orderly processes of government. Thus, in order to tax property owned by the Commonwealth, a local subdivision must establish that it has the authority to tax such property.

Board of Revision of Taxes, 833 A.2d at 713 (citation omitted). The Court further explained that absent such express statutory authority, property owned by SEPTA remains immune from local taxation so long as SEPTA's action with respect to the property is within SEPTA's legislatively authorized purposes and powers, and the actual use of the property is within the scope of SEPTA's immunity. Notably, Board of Revision of Taxes does not reference an Ogontz/Venango/Hazleton test. Nonetheless, the Majority here implausibly concludes that: "Board of Revision of Taxes is consistent with our application of the Ogontz/Venango/Hazleton test here[, as in] both instances, we have sought to enforce the legislature's allocation of authority." Maj. Op. at 14. All cases are alignable if the test is that sort of meaningless generality. Notably, the Commonwealth Court's majority opinion below likewise does not reference an

Ogontz/Venango/Hazleton test; however; just like this Court in Board of Revision of Taxes, the court below obviously sought to enforce the General Assembly's intent by identifying and giving meaning to the plain wording of relevant statutes to reach the conclusion that the Commission simply does not have jurisdiction to impose and enforce the FPO against SEPTA. The fact that the Commonwealth Court did not employ the magic words -- sovereign immunity -- is of no consequence, as the court clearly recognized SEPTA's enabling statute and its existence as a Commonwealth Agency subject to jurisdiction for discrimination cases within the Commonwealth only as permitted by the General Assembly.

Although the Commonwealth Court correctly noted that nothing in the Human Relations Act grants the City authority to subject SEPTA to the City's FPO, the City insists that this fact is irrelevant because the source of the City's power to enact and enforce its FPO is its general home rule police power. That position obviously lacks merit. The City is not the Commonwealth sovereign, even within its borders. The fact remains that the General Assembly has provided that SEPTA exists within the sovereignty of the Commonwealth, thus remaining immune from liability, particularly vis-à-vis laws enacted under the authority of the Commonwealth, absent some exception established by the General Assembly.[1] Because the General Assembly has provided no exception that would allow the City to subject SEPTA to civil rights ordinances conferring rights which extend over and above the General Assembly's state-wide provisions, I would affirm the Commonwealth Court's decision rather than torture plain statutory language to achieve a desired result.

---

[1] Vis-à-vis federal causes of action, we have observed that statutory enactment alone is insufficient to confer immunity upon Commonwealth agencies. Goldman.